(No. 69777.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARVIN FLOWERS, Appellee.

*Opinion filed September 26, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kevin Sweeney and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

James B. Haddad, of Chicago, for appellee.

Timothy J. Leeming, James N. Perlman and Stephen L. Richards, Assistant Public Defenders, of Chicago, for *amicus curiae* Randolph N. Stone, Public Defender of

Cook County.

JUSTICE RYAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant,. Marvin Flowers, was convicted of murder, armed robbery and armed violence, and sentenced to concurrent prison terms of 40 years for murder and 15 years for armed robbery. The appellate court affirmed the convictions in an unpublished Rule 23 order (107 Ill. 2d R. 23). (109 Ill. App. 3d 1211.) Defendant then filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*) and, without an evidentiary hearing, the circuit court granted the State's motion to dismiss the petition. The appellate court, however, applied *People v. Reddick* (1988), 123 Ill. 2d 184, retroactively and held that the instructions given to the jury on the offenses of murder and voluntary manslaughter were erroneous. (192 Ill. App. 3d 292.) Therefore, the court reversed the murder conviction and remanded for a new trial. We granted the State's petition for leave to appeal (107 Ill. 2d R. 315(a)) to address, *inter alia*, the retroactivity of *People v. Reddick* to a case on collateral review. We reverse the appellate court.

The facts in this case are essentially undisputed. Robert Murray was found in his store dead as a result of several blows to his head from a baseball bat. At the time of the murder, defendant was working for Murray and evidence at the store made him a suspect. Near defendant's apartment police officers found Murray's car and in it were a baseball bat, a revolver, a coin bank and two power saws, all of which had been taken from the store. Defendant already was in custody in connection with another incident that had occurred earlier that day. When questioned about the murder, defendant first told police that he was in the store when two men killed Murray and that the two men forced him to put the items in

the car and to put his fingerprints on the gun and bat. The men also told defendant that they would kill him and his girlfriend if he did not help them. Defendant claims to have taken the car under duress. After an officer told him of the unlikelihood of his alibi, defendant changed his story. Defendant stated instead that he and Murray had an argument about money that was allegedly owed to defendant. He claimed that Murray attacked him, initiating a fight. Murray then reached for a gun and defendant grabbed a nearby baseball bat and struck him several times in the head. Realizing that he would not get the money owed him, defendant took cash and property from the store, placed the items into Murray's car and drove back to his apartment, leaving his own car parked in front of the store.

At trial, defendant presented no evidence although counsel argued that defendant had acted under the unreasonable belief that facts existed which justified his conduct and was thus only guilty of voluntary manslaughter. The jury was given pattern jury instructions on the offenses of murder and voluntary manslaughter. (Illinois Pattern Jury Instructions, Criminal, Nos. 7.02, 7.06 (2d ed. 1981).) The murder instruction stated that the State must prove that:

(1) defendant performed the acts which caused the death of Robert Murray;

(2) when defendant did so, he intended to kill or do great bodily harm to Robert Murray; or he knew that his act would cause death or great bodily harm to Robert Murray; or he knew that his acts created a strong probability of death or great bodily harm to Robert Murray; and

(3) defendant was not justified in using the force which he used.

This instruction did not include the so-called "fourth proposition," that the State must prove that the defendant did not believe circumstances existed which justified the use of the force that he used. The voluntary manslaughter instruction required the State to prove that:

(1) defendant intentionally or knowingly performed the acts which caused the death of Robert Murray;

(2) when defendant did so he believed that circumstances existed which would have justified killing Robert Murray;

(3) defendant's belief that such circumstances existed was unreasonable; and

(4) defendant was not justified in using the force which he used.

After deliberations, the jury signed verdict forms finding defendant guilty of both murder and voluntary manslaughter. The trial judge informed the jurors that they could not return both verdicts; it had to be one or the other. The jury resumed deliberations but later sought further instructions. The judge then explained that voluntary manslaughter was a lesser included offense of murder, and that he would not accept a verdict on both charges. He informed the jurors that they should identify which of the verdict forms actually reflected their determination of guilt and then cross out the other guilty verdict form. After further deliberations, the jury returned with the murder verdict intact and the voluntary manslaughter verdict crossed out. Defendant was sentenced to concurrent terms of 40 years for murder and 15 years for armed robbery. No sentence was imposed on the armed violence count.

On appeal from his conviction, in a Rule 23 order, the appellate court held that the trial court did not err when it required the jury to continue deliberations and deter-

mine whether defendant was guilty of murder or voluntary manslaughter. Also, the court held adversely to the defendant on his contention that the trial judge's oral instructions to the jurors constituted reversible error. Defendant did not prevail on his contention that he was not properly proven guilty of armed robbery, felony murder and murder. Last, defendant's challenge to his arrest was unsuccessful.

Defendant subsequently filed a petition pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*), which the trial court dismissed without an evidentiary hearing. As noted, the appellate court reversed. The court applied *People v. Reddick* retroactively and held that the instructions in defendant's case erroneously stated the law and required that defendant be given a new trial. In a petition for rehearing the State argued that any error as to the murder and voluntary manslaughter instructions was rendered harmless because of the felony-murder count of the indictment. The court rejected this contention because the State had not submitted a felony-murder verdict form and the evidence was not so overwhelming that the jury could not have found anything but that the victim's death was caused during the course of the armed robbery. We granted the State's petition for leave to appeal (107 Ill. 2d R. 315). Defendant in his response brief also argued for cross-relief, and the State has filed a reply to the arguments raised (107 Ill. 2d R. 315(g)). We granted leave to file an *amicus curiae* brief to the public defender of Cook County (107 Ill. 2d R. 345(a)).

The first argument we address is defendant's contention that the trial court violated double jeopardy protections when it ordered further deliberations instead of accepting the jury's verdict of voluntary manslaughter. Defendant contends that the initial verdicts finding him guilty of voluntary manslaughter and murder were con-

sistent with the jury instructions. Therefore, the jury found the presence of the statutory mitigating circumstances which distinguish voluntary manslaughter from murder and it impliedly acquitted defendant of murder. He argues that unless the verdicts are hopelessly inconsistent with the instructions the double jeopardy clauses of the State and Federal Constitutions prohibit a court from rejecting those verdicts and in this case the court should have entered the verdict of voluntary manslaughter. The State contends that the appellate court on direct review rejected defendant's argument that the trial judge should have entered the voluntary manslaughter verdict and not the murder verdict. Therefore, he is barred by the principle of *res judicata* from raising again this issue as a double jeopardy claim. Regardless, the State contends that in *People v. Almo* (1985), 108 Ill. 2d 54, this court approved of the trial court's decision to require the jury to deliberate further.

Ordinarily *res judicata* and waiver bar consideration of an issue which was raised or could have been raised on direct review (*People v. Gaines* (1984), 105 Ill. 2d 79, 87-88), but under certain circumstances, fundamental fairness dictates that we consider the issue (*People v. Hamby* (1968), 39 Ill. 2d 290, 291). Defendant argues that *Almo*, which was issued after his direct review, was improperly decided and that in that case no issue of double jeopardy was raised. He contends that if the constitutional doctrine applies in this situation a reversal of his conviction is mandated. Although we ultimately do not accept defendant's argument, we believe that this issue should be addressed.

*People v. Almo* is nearly indistinguishable. In *Almo* the jury was given the same instruction for murder as in this case. This instruction also did not include the fourth proposition, that the State must prove the defendant did not believe circumstances existed which justified the use

of the force that he used. The *Almo* jury initially asked if it must find the defendant guilty of all three charges or whether two guilty verdicts were sufficient. The judge sent it a note explaining the possible verdicts which it could return. The jury's initial verdict forms, however, found defendant guilty of murder, voluntary manslaughter and armed violence. The judge reinstructed the jury that it must find the defendant guilty either of murder or voluntary manslaughter but not both. It then returned a murder verdict. On review, we noted that when the trial judge received the initial verdict forms he could not enter judgment on one and vacate the other. The judge "had no way of knowing which of the two verdicts was intended by the jury and which was a result of some misconception." (*Almo*, 108 Ill. 2d at 63-64.) We stated further:

> "In this case, it was clear that the jury had misunderstood the trial judge's written answer to the jury's question. By its two verdicts the jury indicated its belief that it was legally possible to convict the defendant simultaneously of murder and voluntary manslaughter based upon the same acts. The obvious way to correct this misapprehension was for the trial judge to do precisely what he did, *i.e.*, change the instruction to read that an individual convicted of one crime 'must' not also be convicted of the other. We find the court's action in this case to be both sensible and practical and clearly not an error." 108 Ill. 2d at 64.

Likewise, in this case, the jury exhibited confusion regarding what verdicts it must return. The trial judge could not enter the two verdicts, and he explained to the jury that it could not return guilty verdicts on both counts. (See *People v. Hoffer* (1985), 106 Ill. 2d 186 (case reversed after judge entered the jury verdicts of guilty of murder, voluntary manslaughter and involuntary manslaughter).) The judge told the jury to continue deliberations and return the verdict which it believed most ap-

propriately encompassed defendant's acts. The jury then returned the murder conviction.

Defendant argues that the jury was not confused, rather it intended to convict defendant of voluntary manslaughter only and that, because the initial verdict forms returned were consistent with the instructions, double jeopardy protection was violated. First, we do not agree that the jury exhibited any such intent. (See *Hoffer*, 106 Ill. 2d at 198 (rejecting argument that the jury impliedly acquitted defendant of murder after it returned multiple verdicts).) The jurors were confused, but the judge rectified the problem with his statements regarding their duty, the meaning of the verdict instructions, and the possible verdicts, and with his admonition to cross out the form they did not want and to enter the one best fitting the circumstances. As the court stated in *Almo*, "[a]lthough the jury may have initially been confused, the trial judge's additional instruction alleviated the problem before any verdicts were entered." (*Almo*, 108 Ill. 2d at 65.) Second, the verdicts were legally inconsistent and, therefore, the judge could not enter them both. (See *Hoffer*, 106 Ill. 2d at 194-96 (the mental states involved in the two offenses were mutually inconsistent and a jury could not find that both existed in the same case).) Defendant points out that the instructions in this case failed to include the fourth proposition, unlike the instructions in *Hoffer*, and therefore the two instructions were not inconsistent. However, the trial judge understood that the two convictions could not be entered and explained to the jury that they were incompatible. This admonition compensated for any error in failing to instruct on the fourth proposition. Additionally, as pointed out in *Almo* it is speculative that the fourth proposition would have prevented the jury from reaching its initial verdict. *Almo*, 108 Ill. 2d at 65 (noting that the jury in *Hoffer* received the fourth-proposition instruction and

still returned a guilty verdict on both murder and voluntary manslaughter).

We find that double jeopardy rights were not violated. "The constitutional prohibition of double jeopardy protects a defendant from prosecution of an offense after acquittal or conviction of the same offense and prohibits multiple punishments for the same offense." (*Hoffer*, 106 Ill. 2d at 197.) We have held that the judge acted properly in returning the initial verdict forms to the jury. As a result, there was only one verdict entered in this case and therefore the constitutional principle urged is not implicated. (See *Almo*, 108 Ill. 2d at 63 (" 'The finding of a jury does not become a verdict until it has been received, accepted by the court and entered of record' "), quoting *People v. Wilson* (1972), 51 Ill. 2d 302, 309.) Defendant, however, cites four appellate court opinions which allegedly support his contention that the trial judge should have entered the voluntary manslaughter verdict. (See *People v. Washington* (1984), 127 Ill. App. 3d 365; *People v. Kendricks* (1984), 121 Ill. App. 3d 442; *People v. Fox* (1982), 111 Ill. App. 3d 243; *People v. Stuller* (1979), 71 Ill. App. 3d 118.) We distinguished *Stuller* in *Almo* on the grounds that in *Stuller* the trial judge entered one of the two verdicts returned and vacated the other verdict. The same factual distinction exists in the other cases. In this case and in *Almo*, however, the jury was allowed to resume deliberations after further instructions were given and thus it was allowed to clarify its intent rather than having a judge invade its province. Therefore, we do not find those cases persuasive.

Defendant next argues that his right to due process and right to a trial by jury were violated by the "inherently contradictory" instructions given at his trial. He claims that the written murder and voluntary manslaughter instructions required the jury to return ver-

dicts for both murder and voluntary manslaughter if it found him guilty of voluntary manslaughter. Nevertheless, the judge told the jury that it could not return guilty verdicts for both offenses, and he provided no explanation for reconciling the contradiction. Defendant argues that together these instructions created an irreconcilable conflict on the voluntary manslaughter issue. The State argues that the ruling on this issue on direct appeal is *res judicata* and that the trial judge's statements properly instructed the jury and that these statements were similar to those sanctioned in *Almo*.

Preliminarily, we note that defendant did not object to this instruction at trial and therefore this argument normally would be waived. Pursuant to Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)), if an instruction is substantially defective and the interests of justice require, the objection is not considered waived. In cases subsequent to defendant's trial we recognized flaws in the murder and voluntary manslaughter instructions, and we do not believe that in this instance the failure to object should preclude our addressing the issue. Also, the appellate court did not address the due process issue and we do not believe that the principle of *res judicata* should preclude our consideration of this constitutional issue.

Defendant finds the conflict in his case to exist between the required result of the two written instructions, *i.e.*, guilty verdicts on both counts, and the oral instructions, *i.e.*, not guilty on at least one count. However, the cases he cites involved two written instructions on a single element or offense which were inconsistent and contradictory. (See *People v. Jenkins* (1977), 69 Ill. 2d 61 (two instructions on an essential element of the crime charged were in direct conflict and one was erroneous); *Thomas v. Leeke* (4th Cir. 1984), 725 F.2d 246 (unequivocally contradictory instructions on the burden

of proof for self-defense); *Harless v. Anderson* (6th Cir. 1981), 664 F.2d 610 (garbled and confusing instructions on an element of the offense), *rev'd on other grounds* (1982), 459 U.S. 4, 74 L. Ed. 2d 3, 103 S. Ct. 276; see also *People v. Miller* (1949), 403 Ill. 561 (erroneous and contradictory instructions on self-defense).) Therefore, in these cases the jury was unable to perform its constitutional function. However, the two written instructions for murder and voluntary manslaughter in this case are not in direct conflict and each involves a different mental state. The failure to include the fourth proposition in the murder instruction may have misled the jurors to believe that they had to return guilty verdicts on each charge. We have held, though, that if the language of an instruction is inaccurate, and, standing alone, may mislead the jury, other instructions may explain the inaccuracy, remove the error or render it harmless. (*Miller*, 403 Ill. at 565, quoting *Enright v. People* (1895), 155 Ill. 32, 36; see also *Almo*, 108 Ill. 2d at 65.) The trial judge in defendant's case attempted to explain the jury's necessary outcome in light of the written instructions. He explained that the jurors' role required a verdict and that verdict could not be guilty as to both counts. Although the jurors may have been confused by the written instructions, they were properly told that they could only enter one verdict and they should choose the one best fitting the facts. The judge also explained, albeit not in the clearest manner, that voluntary manslaughter was a lesser included offense of murder. In *Almo*, the court held that the verbal instructions sufficiently alleviated the confusion, and in this instance we believe whatever confusion may have occurred from these written instructions did not rise to a due process violation, in view of the way in which the situation was handled by the trial judge.

The next issue concerns the retroactivity of *People v. Reddick* (1988), 123 Ill. 2d 184, in a post-conviction appeal. First, however, the State claims that we should not address this issue. The State contends that defendant requested the voluntary manslaughter instruction at trial; he did not complain about the wording of the jury instructions in his motion for a new trial; on direct review defendant made no claim that the jury instruction failed to allocate the burden of proof properly; and the post-conviction petition did not raise the issue decided in *Reddick*. Therefore, the issue has been waived and the principle of *res judicata* should prevent consideration of it. Defendant responds that the State waived any objection to the retroactive application of *Reddick* because it failed to present any such argument to the appellate court after defendant filed a supplemental brief in that court which cited the *Reddick* opinion.

Defendant's position is untenable. The State did not have a duty to object to his motion for leave to file a memorandum of law which was based on the newly decided *Reddick* opinion and was filed after the briefs had been submitted to the appellate court. After the appellate court reversed defendant's conviction based on our holding in *Reddick*, the State was entitled to contest on appeal the rationale on which the appellate court relied. We also believe that in this instance the principles of waiver and *res judicata* should not prevent analysis of whether *Reddick* applies. Part of the effect of the error here and in *Reddick* is that the instructions confused the jury. Defendant has at each level of this case complained about the instructions and the confusion they caused, although he did not argue that there was an impermissible burden-shifting. Likewise, one of the defendants in *Reddick* also did not raise the issue at trial, in a post-trial motion or in the direct appeal; nevertheless, this court held that the error was grave and waiver should

not preclude the rule from applying to him. There is an important principle involved and the failure of defendant to raise the issue prior to the court's resolution of it in *Reddick* should not bar consideration of it now.

The State next argues that the holding in *Reddick* that the State should have the burden of proof to disprove a voluntary manslaughter "defense" in order to obtain a murder conviction was based on statutory interpretation. The State contends that constitutionally the burden of proof as to voluntary manslaughter in a case involving murder and voluntary manslaughter instructions may be placed on either party. (See *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (requiring the defendant to bear the burden of proof for manslaughter does not violate due process); *Engle v. Isaac* (1982), 456 U.S. 107, 71 L. Ed. 2d 783, 102 S. Ct. 1558.) The Post-Conviction Hearing Act, however, may only be used to redress the denial of a constitutional right. (Ill. Rev. Stat. 1987, ch. 38, par. 122—1; *People v. Shaw* (1971), 49 Ill. 2d 309, 311.) According to the State, therefore, the violation at defendant's trial of the principle announced in *Reddick* may not be raised in a post-conviction action.

We believe that the jury instructions used in this case sufficiently raised a constitutional issue for us to address the retroactivity of *Reddick* in a post-conviction case. In *Reddick* this court held that the State does not have the burden to raise the two mitigating mental states required in a voluntary manslaughter conviction but that it had the burden to disprove those mental states beyond a reasonable doubt if they are properly raised by the defense and the State seeks to convict defendant of murder. This determination of who has the burden was reached after a statutory construction analysis. The *Reddick* court, though, also addressed the jury instructions. These were found erroneous in that they failed to

appropriately state the burdens of proof and that they were misleading and confusing. The court noted that the voluntary manslaughter instruction appeared to place the initial burden to raise the mitigating mental states on the State and that the murder instruction failed to apprise the jury on the mitigating conditions. Therefore, in *Reddick* this court stated that the two instructions, viewed alone, essentially assured that, if the jury followed them, it could not convict a defendant of voluntary manslaughter. (*Reddick*, 123 Ill. 2d at 194-95.) The court later characterized the error in the instructions as "grave."

First, we note that these instructions did not assure only a verdict of murder would be returned. The State points out that other verdicts have been reached in similar cases. Second, much emphasis appears to be placed on the court's characterization of the error as "grave." A grave error, though, is not necessarily a constitutional error; it may just signify that the error should not be considered waived if the defendant failed to object to it. The instructions in this case, however, standing alone, do potentially violate the constitutional right to have the jury adequately apprised of the appropriate law. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66-67 (erroneous instructions may prohibit the jury from performing its constitutional function); see also *Falconer v. Lane* (7th Cir. 1990), 905 F.2d 1129, 1134 (a Federal *habeas corpus* action in which the court held that *Reddick* "obviously considered the errors resulting from the invalid instructions to be of constitutional magnitude").) The court stated in *Reddick* "that certain instructions, such as the burden of proof and elements of the offense, are essential to a fair trial and that the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the People's burden of proof." (*Reddick*, 123 Ill. 2d at

198; see also *Martin v. Ohio* (1987), 480 U.S. 228, 94 L. Ed. 2d 267, 107 S. Ct. 1098 (instructions misstated the burden of proving self-defense; however, other instructions sufficiently stated the burdens of proof so as not to confuse the jury).) As noted, in our case part of the error was mitigated by the instructions the trial judge gave; nevertheless, the error is of a constitutional dimension and the issue may be addressed in a post-conviction proceeding.

The main issue before us, therefore, is whether the *Reddick* decision will retroactively apply to a post-conviction proceeding. The United States Supreme Court in *Teague v. Lane* (1989), 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060, held that decisions establishing new constitutional rules of criminal procedure are not to be applied retroactively to cases pending on collateral review unless the new rule either (1) places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe, or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty. (*Teague*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073.) Defendant and *amicus* point out that the rule adopted in *Teague* was applied to bar application of a new constitutional rule in *habeas corpus* actions pending in the Federal courts and that the collateral review we are addressing involves an action in State court brought pursuant to our Post-Conviction Hearing Act. They argue that these two collateral reviews are distinguishable and that we should not adopt *Teague*'s standard and holding.

We, believe, however, that the *Teague* rule should be applied in this case. The *Teague* test is helpful and concise and in it we have the pronouncement of the Supreme Court on an issue nearly identical to the one before us. (See also *Brewer v. State* (Iowa 1989), 444

N.W.2d 77 (adopting the *Teague* test); *State v. Lark* (1989), 117 N.J. 331, 567 A.2d 197 (discussing *Teague* and noting that, although the analogy between Federal *habeas* proceedings and State post-conviction relief proceedings was imperfect, they were sufficiently similar to support the court's conclusion of nonretroactive application of a new constitutional rule).) Even prior to *Teague*, when determining whether a case dealing with a constitutional right should receive retroactive application under our Post-Conviction Hearing Act, we have ruled in accord with the Supreme Court's determination of whether to give the case retroactive application in a Federal *habeas* proceeding. In *People v. James* (1986), 111 Ill. 2d 283, we held that *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, which dealt with the right to counsel during questioning in criminal cases, should not receive retroactive application in a post-conviction proceeding. This decision was reached after observing that the Supreme Court had denied application of *Edwards* in a collateral attack pursuant to the Federal *habeas corpus* act. See *Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338.

Moreover, although the analogy is not perfect, the collateral proceeding involved in this case is similar to that involved in *Teague*. A *habeas corpus* proceeding and an action pursuant to our Post-Conviction Hearing Act are both collateral attacks that are not meant to be a substitute for direct review. Their primary goal is to ensure that defendants are not denied constitutional protections. (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 (corrects the substantial denial of constitutional rights); *Teague*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073 (writs are not intended to ensure a trial free of constitutional error, but they serve as an incentive to courts throughout the country to conduct their proceed-

ings consistent with constitutional principles prevailing at the time the proceedings take place).) The scope of a *habeas* proceeding is also defined by interests of comity and finality. The *Teague* Court stated:

> "[U]nderlying considerations of finality find significant and compelling parallels in the criminal context. Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." (489 U.S. at 309, 103.L. Ed. 2d at 355, 109 S. Ct. at 1074.)

Certainly, Illinois has an interest in finality of its criminal trials, so long as the defendant was accorded a trial consistent with constitutional principles. In fact, our post-conviction statute provides a 10-year window during which the action may be brought. Although our statute is unclear, we do not believe that a constitutional principle established after the trial necessarily must be retroactively applied.

Application of the *Teague* rule indicates that *Reddick* should not be applied retroactively. In general, according to *Teague*, a new rule should not apply retroactively to cases on collateral review. The defendant, however, contends that no new rule was established in *Reddick*. He argues that the holding in *Reddick* was reached after reviewing the affirmative defense provision of the Criminal Code of 1961 and its predecessor in the Criminal Code of 1874. From this review, the court determined that the defendant had the burden to initially raise the mitigating mental states and then the State had the burden to disprove their existence by proof beyond a reasonable doubt. Therefore, he concludes that *Reddick* did not establish a new rule but merely interpreted existing laws.

In discussing the meaning of a new rule, the Court in *Teague* stated that "a case announces a new rule when it

breaks new ground or imposes a new obligation on the States or the Federal Government. [Citations.] To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) (*Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070.) In *Butler v. McKellar* (1990), 494 U.S. 407, 108 L. Ed. 2d 347, 110 S. Ct. 1212, the Court said that if prior to the rule's being established there was a significant difference of opinion on the issue in the lower courts, this would indicate that a decision is a new rule and not merely an application of an earlier decision to a different set of facts. *Butler*, 494 U.S. at ___, 108 L. Ed. 2d at 356-57, 110 S. Ct. at 1217-18.

We conclude that *Reddick* did constitute a new rule. Though *Reddick* was doctrinally consistent with existing laws regarding affirmative defenses and burdens of proof, it was the first time this court applied these legal principles to the specific situation of the murder and voluntary manslaughter instructions. In applying these principles, not only did the court determine that the instructions were erroneous, it also ruled that, as written, they implicated constitutional rights. This conclusion did not necessarily flow from the statutory analysis. (See *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319.) Also, this "result was not *dictated* by precedent existing at the time." (Emphasis in original.) (*Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070.) Instead, the long-standing practice in the trial courts was to instruct the jury on murder and voluntary manslaughter consistent with the Illinois Pattern Jury Instructions. This court also did not invalidate these instructions in other cases it reviewed prior to *Reddick*. (See *People v. Almo* (1985), 108 Ill. 2d 54; *People v. Hoffer* (1985), 106 Ill. 2d 186 (although court noted that instructions should be amended).) Moreover, prior to

this court's ruling that the State has the burden to negate the voluntary manslaughter mitigating mental states, at least one panel of the appellate court had ruled that the State did not bear this burden. (*People v. March* (1981), 95 Ill. App. 3d 46; see *Butler*, 494 U.S. at ___, 108 L. Ed. 2d at 356-57, 110 S. Ct. at 1217-18 (difference of opinion in lower courts indicates that rule is new).) Therefore, under the *Teague* analysis, unless this new rule falls within one of the two exceptions, it will not be applied retroactively.

The first exception states that the new rule should be given retroactive application if it places certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe. (*Teague*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073.) This exception does not apply. The conduct proscribed in this case is murder, the prosecution of which is not prohibited by *Reddick*. Nor does the *Reddick* rule involve a categorical guarantee accorded by the Constitution such as a prohibition on the imposition of death on a certain class of offenders. See *Penry v. Lynaugh* (1989), 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934.

Under the second exception, a new rule may be applied on collateral review if it requires the observance of those procedures that are implicit in the concept of ordered liberty. (*Teague*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073.) In *Teague*, the Court stated:

"[W]e believe that Justice Harlan's concerns about the difficulty in identifying both the existence and the value of accuracy-enhancing procedural rules can be addressed by limiting the scope of the second exception to those new procedures without which the likelihood of an accurate conviction is seriously diminished.

Because we operate from the premise that such procedures would be so central to an accurate determination

of innocence or guilt, we believe it unlikely that 'many such components of basic due process have yet to emerge." (489 U.S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1076-77.)

This exception must be narrowly construed and we do not believe that the *Reddick* rule established such a component of basic due process so as to fall within it.

For the above-stated reasons, we conclude that the *Reddick* rule should not be applied retroactively. This holding makes it unnecessary to address the State's argument that the error was harmless because defendant's conviction should be affirmed based on the felony-murder doctrine. Therefore, we reverse the appellate court and affirm the trial court's dismissal of defendant's post-conviction petition.

*Appellate court reversed;*
*circuit court affirmed.*