People v. Caballero, No. 81259 (12/4/97)

     

     NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the

     opinion to request a rehearing. Also, opinions are subject to modification, correction or

     withdrawal at anytime prior to issuance of the mandate by the Clerk of the Court.

     Therefore, because the following slip opinion is being made available prior to the

     Court's final action in this matter, it cannot be considered the final decision of the

     Court. The official copy of the following opinion will be published by the Supreme

     Court's Reporter of Decisions in the Official Reports advance sheets following final

     action by the Court.

     

               Docket No. 81259--Agenda 5--May 1997.

       THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JUAN

                       CABALLERO, Appellant.

                  Opinion filed December 4, 1997.

                                   

          JUSTICE HARRISON delivered the opinion of the court:

          Defendant, Juan Caballero, appeals from an order of the circuit court of

     Cook County dismissing, without an evidentiary hearing, his petition for post-

     conviction relief (725 ILCS 5/122--1 et seq. (West 1992)) and relief from

     judgment (735 ILCS 5/2--1401 (West 1992)). Because defendant was sentenced

     to death for the underlying murder convictions, the present appeal lies directly to

     this court. 134 Ill. 2d R. 651(a).

          Early on the morning of February 25, 1979, the bodies of three teenage

     males, Michael Salcido, Arthur Salcido, and Frank Mussa, were discovered in a

     car in a Chicago alley. In 1980, a jury found defendant guilty on charges of

     murder, unlawful restraint, and armed violence with respect to each of the three

     victims. On direct appeal, this court affirmed defendant's convictions and death

     sentence. People v. Caballero, 102 Ill. 2d 23 (1984).

          Defendant filed a petition for post-conviction relief alleging, inter alia, that

     he was denied effective assistance of counsel at his capital sentencing hearing. The

     circuit court dismissed the petition without an evidentiary hearing. On appeal, this

     court held that the allegations made a substantial showing of constitutional rights

     deprivation and remanded the cause for an evidentiary hearing. People v.

     Caballero, 126 Ill. 2d 248 (1989). After a hearing, the circuit court denied

     defendant post-conviction relief based on ineffective assistance of counsel at

     sentencing and this court affirmed. People v. Caballero, 152 Ill. 2d 347 (1992).

          On October 29, 1993, defendant filed a petition for post-conviction relief

     and relief from judgment based on the unconstitutional disparity of his death

     sentence, and later amended the petition to include violation of his due process

     right to "reverse-Witherspoon," or "life qualify," the jury. The State moved to

     dismiss defendant's petition. On May 29, 1996, after oral argument on the State's

     motion, the circuit court dismissed the petition and this appeal followed. The facts

     of this case are adequately set forth in our opinion on defendant's direct appeal

     and will not be repeated here.

          Initially, we note that while defendant alternatively argues that he is

     entitled to relief from judgment pursuant to section 2--1401 of the Civil Practice

     Law (735 ILCS 5/2--1401 (West 1992)), where a section 2--1401 petition is filed

     beyond two years after the judgment was entered, it cannot be considered. 735

     ILCS 5/2--1401(c) (West 1992); see also People v. Logan, 49 Ill. App. 3d 787,

     790 (1977), aff'd, 72 Ill. 2d 358 (1978). This court has held that the two-year

     limitation mandated by section 2--1401 and its predecessor, section 72 (Ill. Rev.

     Stat. 1975, ch. 110, par. 72), must be adhered to in the absence of a clear showing

     that the person seeking relief is under legal disability or duress or the grounds for

     relief are fraudulently concealed. Crowell v. Bilandic, 81 Ill. 2d 422, 427 (1980);

     People v. Berland, 74 Ill. 2d 286, 317 (1978). Moreover, the fact that a post-

     judgment motion or an appeal may be pending does not serve to toll the period

     of limitation. See Sidwell v. Sidwell, 127 Ill. App. 3d 169, 174 (1984).

          Defendant's section 2--1401 petition was filed 13 years after the judgment

     of conviction was entered and sentence imposed in 1980, and he does not contend

     that any of the grounds for tolling the limitations period exist. Therefore, section

     2--1401 is not available as a remedy. Although the circuit court did not state its

     reasoning for dismissing that portion of defendant's petition, we may affirm for

     any reason warranted by the record, regardless of the reasons relied on by the

     lower court. People v. Nash, 173 Ill. 2d 423, 432 (1996).

          The State contends that the circuit court also properly dismissed

     defendant's petition for post-conviction relief because, as his second, it is

     procedurally barred. It is true that the Post-Conviction Hearing Act (Act)

     contemplates the filing of only one petition, and "a ruling on a post-conviction

     petition has res judicata effect with respect to all claims that were raised or could

     have been raised in the initial petition." People v. Free, 122 Ill. 2d 367, 375-76

     (1988); accord People v. Flores, 153 Ill. 2d 264, 273-74 (1992).

                    "The filing of successive post-conviction petitions sets up

                    two competing interests. On the one hand, there is the State's

                    interest in providing a forum for the vindication of the petitioner's

                    constitutional rights. On the other hand, the State has a legitimate

                    interest in the finality of criminal litigation and judgments. ***

                              * * *

                    Where, however, the claimed error is one which could not

                    have been presented in an earlier proceeding, procedural bars may

                    be ineffectual in bringing about that finality which ordinarily

                    follows direct appeal and the first post-conviction proceeding. In

                    such cases, there is the potential that a second or subsequent post-

                    conviction petition may be filed ***." Flores, 153 Ill. 2d at 274-75.

          Defendant's sentence disparity claim constitutes one such case.

          Defendant and three codefendants have been convicted of the triple

     homicide involved herein. Defendant and codefendant Luis Ruiz were tried in

     1980 before one judge supervising two separate juries, and, following separate

     sentencing hearings, both men were sentenced to death. In his second post-

     conviction petition, defendant claims that the disparity between his death sentence

     and the prison sentences of codefendants Placido LaBoy and Nelson Aviles

     violates defendant's constitutional rights. Defendant has supplemented his petition

     with portions of the circuit court records of Aviles and LaBoy, which indicate that

     Aviles had been a fugitive from 1979 until 1988. After Aviles was arrested in

     California, he agreed to testify against LaBoy and plead guilty to the murders in

     exchange for an agreed recommendation by the State of a 40-year sentence. In

     February 1992, Aviles testified at LaBoy's jury trial and, although the State sought

     the death penalty, the jury concluded that a sentence other than death should be

     imposed. Accordingly, LaBoy was sentenced to three consecutive natural-life

     terms of imprisonment. In March 1992, Aviles plead guilty and received

     concurrent sentences of 40 years on each of the three murder counts.

          LaBoy and Aviles were sentenced during the pendency of defendant's

     appeal from the circuit court's denial of his first post-conviction petition. On April

     3, 1992, defendant filed with this court a "Motion to Take Judicial Notice of the

     Trial of Codefendants and to Raise the Additional Issue of Proportionality and to

     Submit Additional Authority." Defendant's motion was denied on May 12, 1992.

     This court's opinion affirming denial of defendant's first post-conviction petition

     was filed October 15, 1992, and rehearing was denied on December 7, 1992.

          It is thus obvious that defendant's claim of unconstitutional disparity in

     sentencing could not have been presented in an earlier proceeding, and, indeed,

     his attempt to raise the claim on appeal from his first post-conviction petition was

     rebuffed by this court. Therefore, defendant's claim of sentence disparity is neither

     res judicata nor waived. See Flores, 153 Ill. 2d at 281-82 (where defendant's

     ineffective-assistance claims could not have been raised on direct appeal or in his

     first post-conviction proceeding, those claims were neither res judicata nor

     waived). Further, although defendant's direct appeal challenged his death sentence

     as disproportionate and excessive (Caballero, 102 Ill. 2d at 46-47), the issue of

     disparity in sentencing between defendant and his codefendants is not, contrary to

     the State's assertion, "essentially the same" such that "res judicata bars a second

     visit to this issue." See Flores, 153 Ill. 2d at 293-94.

          Finally, the statutory time limitation in the Act is also no bar to

     defendant's sentence disparity claim. The applicable section provides, inter alia:

               "No proceedings under this Article shall be commenced more than

                    *** 6 months after the date of the order denying certiorari by the

                    United States Supreme Court *** or 3 years from the date of

                    conviction, whichever is later, unless the petitioner alleges facts

                    showing that the delay was not due to his culpable negligence."

                    (Emphasis added.) 725 ILCS 5/122--1 (West 1992).

          Defendant's petition sets forth a factual chronology in support of his

     allegation that "any delay in filing this Petition was not due to Defendant's

     culpable negligence but was a result of the timing of the sentencings of LaBoy

     and Aviles." The circuit court specifically agreed with defendant on this point,

     stating: "defendant could not have raised this disparate sentencing issue *** on his

     direct appeal or in his initial post-conviction petition." We do not believe this

     finding by the circuit court was manifestly erroneous. See People v. Silagy, 116

     Ill. 2d 357, 365 (1987) (at a hearing under the Act, determinations by the trial

     court will not be disturbed unless manifestly erroneous). Therefore, we find that

     defendant has sufficiently met his burden of showing that the delay in filing his

     second post-conviction petition asserting a sentence disparity claim was not due

     to his culpable negligence.[fn1] See People v. Lansing, 35 Ill. 2d 247, 248

     (1966); People v. Heirens, 271 Ill. App. 3d 392, 401 (1995).

          Defendant contends that his petition was sufficient to require a hearing and

     a ruling on the merits of his sentence disparity claim, but that the circuit court

     dismissed the petition based on the mistaken belief that the issue of

     unconstitutional disparity of sentences could only be considered by an appellate

     court. Following oral argument by the parties at the hearing on the State's motion

     to dismiss, the circuit court cited extensively from this court's decisions in People

     v. Page, 156 Ill. 2d 258 (1993), and People v. Edgeston, 157 Ill. 2d 201 (1993),

     concluding "these cases stand for the proposition that the issue of disproportionate

     sentence is a matter for appellate review." The circuit court has misinterpreted our

     holdings.

          In Page and Edgeston, this court held that a defendant's request to have

     the jury at his capital sentencing hearing consider nonstatutory mitigating evidence

     of a codefendant's natural life sentence was neither constitutionally required nor

     relevant to the jury's examination of the individual defendant's characteristics and

     the circumstances of his offense. Edgeston, 157 Ill. 2d at 239. We further stated

     that in order to insure that the death penalty was not imposed in an arbitrary or

     capricious manner, we would, on direct review of an appropriate case, consider

     whether a death sentence is disproportionately harsh in comparison with a less

     severe sanction imposed on a codefendant convicted of the same offense. Page,

     156 Ill. 2d at 270.

          Neither Page nor Edgeston dealt with the sentence disparity issue in the

     context of a petition for post-conviction relief, nor did they hold that a circuit

     court could not consider such an issue raised under the Act. Disparity of sentence

     is cognizable under the Act in noncapital cases (see People v. Wren, 223 Ill. App.

     3d 722, 729 (1992)), and where circuit courts routinely handle post-conviction

     petitions in capital cases, we see no reason to preclude examination of this issue.

     Thus, we agree with defendant that the circuit court erroneously believed the issue

     was "a matter for appellate review" only. A remand for a decision on the merits

     is therefore necessary, unless, as the State contends, the court's dismissal was

     correct because defendant's sentencing disparity claim does not constitute a

     substantial constitutional error within the meaning of the Act. See Nash, 173 Ill.

     2d at 432 (the question on review is the correctness of the trial court's result, not

     the correctness of the reasoning upon which that result was based); People v.

     Hightower, 258 Ill. App. 3d 517, 519 (1994).

          One who seeks relief under the Act for disparity of sentence must allege

     facts which, if proven, indicate that his constitutional rights were violated in that

     regard. See Wren, 223 Ill. App. 3d at 729; People v. Adams, 164 Ill. App. 3d 742,

     745 (1987). Arbitrary and unreasonable disparity between the sentences of

     similarly situated codefendants is impermissible. People v. Jackson, 145 Ill. 2d 43,

     119 (1991), vacated on other grounds, 506 U.S. 802, 121 L. Ed. 2d 5, 113 S. Ct.

     32 (1992); People v. Godinez, 91 Ill. 2d 47, 55 (1982). However, the mere

     disparity of sentences does not, by itself, establish a violation of fundamental

     fairness. People v. Kline, 92 Ill. 2d 490, 508 (1982). A disparity of sentences will

     not be disturbed where it is warranted by differences in the nature and extent of

     the concerned defendants' participation in the offense. Flores, 153 Ill. 2d at 294;

     Godinez, 91 Ill. 2d at 55.

           Defendant's petition alleged that his death sentence was unconstitutionally

     disparate from the natural life sentence received by LaBoy, who, according to

     testimony at his trial and sentencing and the affidavit of defendant's counsel,

     played a more culpable role in the murders and had a more significant criminal

     record and less rehabilitative potential than defendant. The petition further alleged

     that defendant's death sentence was unconstitutionally disparate from the 40-year

     prison term received by Aviles, who played a similar role in the offenses.

     Defendant's petition was verified and its allegations were additionally supported

     by numerous exhibits, including circuit court computer records reflecting the

     sentences received by LaBoy and Aviles, and relevant portions of the official

     transcript from LaBoy's trial and penalty phase proceedings detailing the relative

     culpability of the various participants in the murders, Aviles' plea agreement,

     LaBoy's criminal background, rehabilitative potential and the findings and

     conclusions of the trial court in sentencing LaBoy.

          The standard for the evaluation of defendant's sentence disparity claim is

     clear:

               "A Post-Conviction Hearing Act proceeding is not an appeal per se,

                    but a collateral attack on a judgment. [Citation.] In order to prevail

                    under the Act, the defendant must establish a substantial

                    deprivation of his rights under the United States Constitution or the

                    Constitution of Illinois. [Citation.] The defendant is not entitled to

                    an evidentiary hearing unless the allegations of his petition,

                    supported where appropriate by the trial record or by

                    accompanying affidavits, make a substantial showing that the

                    defendant's rights have been so violated. [Citation.] For the

                    purpose of determining whether to grant an evidentiary hearing, all

                    well-pleaded facts in the petition and in any accompanying

                    affidavits are to be taken as true. [Citations.]" Caballero, 126 Ill.

                    2d at 258-59.

     In light of these considerations, we believe that defendant has made a substantial

     showing that his constitutional rights were violated so as to entitle him to an

     evidentiary hearing on the disparity between his death sentence and LaBoy's life

     sentence. See People v. Gleckler, 82 Ill. 2d 145 (1980) (death sentence vacated

     to prevent its arbitrary imposition where more culpable codefendant, with criminal

     record and similarly poor rehabilitative prospects, received imprisonment term).

          However, with regard to Aviles, we find that even if all the "well-pleaded

     facts" in the petition and supporting exhibits are taken as true, defendant has not

     established an unconstitutional disparity. A sentence imposed on a codefendant

     who pleaded guilty as part of a plea agreement does not provide a valid basis of

     comparison to a sentence entered after a trial. See People v. Brown, 267 Ill. App.

     3d 482, 487 (1994). Further, dispositional concessions are properly granted to

     defendants who plead guilty when the interest of the public in the effective

     administration of criminal justice would thereby be served. People v. Sivels, 60 Ill.

     2d 102, 105 (1975). Aviles, by agreeing to plead guilty and testify against LaBoy

     in exchange for the State's recommendation of a 40-year sentence: (1)

     acknowledged his guilt and showed willingness to assume responsibility for his

     conduct; (2) made a public trial unnecessary; and (3) gave cooperation which

     resulted in the successful prosecution of another offender engaged in equally

     serious or more serious criminal conduct. See Sivels, 60 Ill. 2d at 105. Thus,

     defendant cannot establish that the disparate treatment of himself and Aviles was

     unreasonable or unwarranted. We therefore affirm the circuit court's dismissal of

     defendant's claim of sentence disparity as to Aviles.

          Finally, we address defendant's contention that the trial court's failure to

     "reverse-Witherspoon" the jury entitles him to post-conviction relief. Defendant

     raised this issue on direct appeal, and this court rejected the argument that his

     capital sentencing jury should have been "life qualified" in order to exclude all

     jurors who feel that the death penalty should be automatically imposed in all

     murder cases.[fn2] Caballero, 102 Ill. 2d at 45-46. Eight years later, in Morgan

     v. Illinois, 504 U.S. 719, 735-36, 119 L. Ed. 2d 492, 506-07, 112 S. Ct. 2222,

     2233 (1992), the United States Supreme Court held that a capital defendant is

     entitled to inquire into prospective jurors' opinions in support of the death penalty,

     or reverse-Witherspoon the jury. Defendant argues that, in light of Morgan, "he

     is entitled to the constitutional due process right to `life qualify' the jury." We

     find, however, that the circuit court correctly concluded that the Morgan decision

     does not apply retroactively to cases on collateral review.

          "In Teague v. Lane (1989), 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct.

     1060, the United States Supreme Court barred the retroactive application, upon

     collateral review, of a new constitutional rule of criminal procedure that is

     announced after a defendant's conviction is final because all avenues of direct

     appeal have been exhausted." People v. Holman, 164 Ill. 2d 356, 380 (1995). The

     Teague Court held that a case announces a new rule "when it breaks new ground

     or imposes a new obligation on the States or the Federal Government." Teague,

     489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070. In other words, "a case

     announces a new rule if the result was not dictated by precedent existing at the

     time the defendant's conviction became final." (Emphasis in original.) Teague, 489

     U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070; People v. Flowers, 138 Ill.

     2d 218, 240 (1990). In Flowers, this court adopted the Teague test for purposes

     of analyzing collateral review under the Act. Flowers, 138 Ill. 2d at 237-38.

          Application of the Teague test indicates that Morgan should not be applied

     retroactively because it constituted a new rule. Clearly, the result defendant seeks

     was not "dictated" by existing precedent, where this court rejected his original

     claim that his jury should have been "life qualified." Caballero, 102 Ill. 2d at 45-

     46. Indeed, in People v. Cloutier, 156 Ill. 2d 483, 497 (1993), this court found that

     prior to Morgan, "no reverse-Witherspoon questioning was required in Illinois."

     Further, "if prior to the rule's being established there was a significant difference

     of opinion on the issue in the lower courts, this would indicate that a decision is

     a new rule." Flowers, 138 Ill. 2d at 240. In Morgan, the United States Supreme

     Court specifically stated that it granted certiorari because of the considerable

     disagreement on the issue among state courts of last resort. Morgan, 504 U.S. at

     725, 119 L. Ed. 2d at 500, 112 S. Ct. at 2227.

          Nevertheless, defendant argues that the Morgan Court did not enunciate a

     new rule, but rather based its decision on precedent interpreting the due process

     clause requirement that a jury be impartial. We agree with the State that while the

     right to reverse-Witherspoon does stem from a defendant's due process right to an

     impartial jury (see Morgan, 504 U.S. at 728-29, 119 L. Ed. 2d at 502-03, 112 S.

     Ct. at 2229), what renders Morgan a new rule is the "new obligation" imposed

     upon the trial courts to "life qualify" the jury upon the request of a capital

     defendant. Therefore, unless this new rule falls within one of the two exceptions

     recognized in Teague, it will not be applied retroactively.

          The first exception states that the new rule should be given retroactive

     application if it places certain kinds of primary, private individual conduct beyond

     the power of the criminal-law-making authority to proscribe. Teague, 489 U.S. at

     307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073. Defendant does not argue that this

     exception applies, and it clearly does not. The conduct proscribed in this case is

     murder, the prosecution of which is not prohibited by Morgan. Nor does the

     Morgan rule involve a categorical guarantee accorded by the Constitution such as

     a prohibition on the imposition of death on a certain class of offenders. See

     Flowers, 138 Ill. 2d at 241.

          Under the second exception, a new rule may be applied on collateral

     review if it requires the observance of those procedures that are implicit in the

     concept of ordered liberty. Teague, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S.

     Ct. at 1073. This second exception is reserved for "watershed rules of criminal

     procedure" implicating the fundamental fairness and accuracy of the trial. Teague,

     489 U.S. at 311-12, 103 L. Ed. 2d at 356-57, 109 S. Ct. at 1076. While defendant

     contends that this exception applies to the right to reverse-Witherspoon a jury, we

     find it significant that Morgan requires a trial court to "life qualify" prospective

     jurors only at the defendant's request. The condition that the defendant make the

     request suggests that such voir dire questioning is not " `so central to an accurate

     determination of innocence or guilt' " as to constitute a component of basic due

     process. See Flowers, 138 Ill. 2d at 241-42, quoting Teague, 489 U.S. at 313, 103

     L. Ed. 2d at 358, 109 S. Ct. at 1077.) Therefore, because this exception must be

     narrowly construed (Flowers, 138 Ill. 2d at 242), we find that the Morgan rule

     does not fall within its boundaries.

          In light of these considerations, we find no error in the circuit court's

     dismissal of defendant's post-conviction petition with respect to this issue.

     Application of Morgan to defendant's post-conviction proceeding would have been

     an improper, retroactive operation of a new rule of criminal procedure in order to

     collaterally challenge defendant's conviction, which had become final before

     Morgan was announced. See Holman, 164 Ill. 2d at 381-82.

          For the reasons stated, the judgment of the circuit court of Cook County

     is affirmed in part and reversed in part. The cause is remanded to the circuit court

     for an evidentiary hearing on that portion of defendant's post-conviction petition

     that alleges that his sentence of death is unconstitutionally disparate from the

     natural life sentence imposed on codefendant LaBoy.

     

     Judgment affirmed in part and

                                              reversed in part;

                                                cause remanded.

                                                               

                                                                      JUSTICE BILANDIC, dissenting:

          The majority opinion holds that "defendant has made a substantial showing

     that his constitutional rights were violated so as to entitle him to an evidentiary

     hearing on the disparity between his death sentence and LaBoy's life sentence."

     Slip op. at 7-8. I respectfully dissent from the majority's holding on this issue. For

     the reasons that follow, I find that the circuit court properly dismissed defendant's

     petition for post-conviction relief. See People v. P.H., 145 Ill. 2d 209, 220 (1991)

     (the reasons provided by the trial court for its judgment are immaterial if the

     decision is correct).

          The facts as set forth in this court's opinion on direct appeal (People v.

     Caballero, 102 Ill. 2d 23 (1984)) reveal that defendant, Luis Ruiz, Placedo LaBoy

     and Nelson Aviles, all members of the Latin Kings, committed the murders of

     Arthur and Michael Salcido and Frank Mussa. Defendant and his companions

     encountered the three victims when Michael Salcido approached Luis Ruiz and

     asked him where he could purchase marijuana. Michael told defendant and his

     companions that he was a member of a rival street gang, the Latin Eagles, because

     he believed they were members of that gang. Defendant and his companions got

     into one of the victim's cars on the pretense that they would help the victims buy

     marijuana. Defendant and his companions had the car driven to an alley where

     they instructed Michael to get out of the car and follow them to buy some

     marijuana. While they were alone with Michael, defendant and his companions

     beat him. Upon returning to the car, defendant and the others decided to kill

     Michael and his friends because they had seen their faces and could identify them.

     Michael and Frank were taken out of the car by defendant and LaBoy. When

     defendant returned to the car, he watched while Aviles stabbed Arthur. Frank was

     then brought to the car. Ultimately, defendant encouraged LaBoy to cut Frank's

     throat. Defendant then retrieved Michael and brought him to the car containing the

     bodies of Arthur and Frank. Defendant pushed Michael into the car, pulled back

     his head, slit his throat and stabbed him in the chest several times.

          As noted in the majority opinion, defendant's petition for post-conviction

     relief alleged that his death sentence was unconstitutionally disparate from the

     natural life sentence received by LaBoy because LaBoy played a more culpable

     role in the murders, had a more significant criminal record and less rehabilitative

     potential than defendant. Slip op. at 7. This court has repeatedly commented that

     simply because "some or all of the members of [a codefendant's] sentencing jury

     chose not to impose the death penalty in [the codefendant's] case does not, in our

     view, render the defendant's own sentence disproportionate." See People v.

     Kitchen, 159 Ill. 2d 1, 46 (1994). From this court's recitation of the facts on direct

     appeal, it is evident that defendant's claim of unconstitutional disparity in

     sentencing is not supported. Defendant alleges that LaBoy was the ringleader and

     implies that he was only a follower. Evidence that a defendant is a follower, as

     opposed to a leader, has been held to be a significant factor in disparate

     sentencing analysis. See People v. Jackson, 145 Ill. 2d 43, 125 (1991). The facts

     in this case, however, refute defendant's claim. They show that defendant

     encouraged LaBoy to slash one of the victim's throats and then proceeded to slash

     another victim's throat himself and repeatedly stab that victim. As noted by this

     court on direct appeal, defendant was an active, willing participant in all three of

     the murders. Caballero, 102 Ill. 2d at 42. Defendant has thus failed to show that

     he was merely a follower and that LaBoy was more culpable.

          The facts, as revealed in this court's opinion on direct appeal, also provide

     some insight into defendant's character. The facts show that defendant is a ruthless

     killer, who exhibited no remorse for his actions. Following his statement to the

     police, defendant expressed a willingness to kill again. When asked if he had a

     chance to do it over " `would he do it again,' " defendant stated that he would

     " `if it was a sure thing.' " Caballero, 102 Ill. 2d at 46. Defendant's only regret

     was that he was caught. Defendant's statements expressing a lack of remorse

     reveal that defendant had little rehabilitative potential. In light of the facts

     regarding defendant's actions during the murder and his character, LaBoy's

     allegedly more severe criminal record, standing alone, does not render defendant's

     death sentence arbitrarily and unreasonably disparate with that of LaBoy's life

     sentence. See People v. Towns, 174 Ill. 2d 453, 481 (1996).

          I would therefore find that defendant failed to establish that the sentence

     of death imposed on him is unconstitutionally disparate from LaBoy's life

     sentence. As such, defendant's petition fails to make a substantial showing that

     defendant's constitutional rights have been violated. I would therefore affirm the

     circuit court's dismissal of defendant's claim of unconstitutional sentence

     disparity.

     

          JUSTICES MILLER and HEIPLE join in this dissent.

     

     

     

     [fn1] Defendant's petition also states that it is timely under section 122--1 because

     it is filed within six months after the date of the order denying certiorari by the

     United States Supreme Court. While it appears that, as in the case at bar, a second

     post-conviction petition filed within six months after the Supreme Court's denial

     of certiorari from a defendant's initial post-conviction petition is timely under

     section 122--1 (see Flores, 153 Ill. 2d at 271-72, 275), we decline the State's

     invitation to decide this issue of statutory interpretation, because we find the

     exception to that section's time limits applies here.

     

     [fn2] In his first post-conviction petition, defendant argued that his trial counsel

     was incompetent for failing to "life qualify" the jury. This contention was not

     considered by this court on appeal because, based on another alleged error by

     counsel, defendant's petition was remanded for an evidentiary hearing to

     determine if he was denied a fair sentencing hearing.  Caballero, 126 Ill. 2d at

     268-69, 283.