THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADDOLFO DAVIS, Defendant-Appellant.

First District (3rd Division)   No. 1—07—0398

Opinion filed February 25, 2009.—Rehearing denied March 25, 2009.

Patricia Unsinn and Emily E. Filpi, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Alan J.

Spellberg, Tasha-Marie Kelly, and Omar Jaleel, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Defendant, while a juvenile, was transferred to the criminal courts where he was charged with and convicted of two counts of first-degree murder, two counts of attempted first-degree murder, and home invasion. Defendant was sentenced to life imprisonment for the murder convictions and lesser concurrent terms on the other convictions. Defendant's convictions and sentences were affirmed on direct appeal. *People v. Davis*, No. 1—93—1821 (October 23, 1995) (unpublished order under Supreme Court Rule 23), *appeal denied*, 165 Ill. 2d 556 (1996). Defendant also filed several *pro se* petitions for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2002)), which were summarily dismissed by the circuit court. These summary dismissals were affirmed by this court. Defendant now appeals from the second-stage dismissal of a supplemental post-conviction petition.

On appeal, defendant contends that: (1) the circuit court erred in dismissing his petition where defendant made a substantial showing that, pursuant to our supreme court's holding in *People v. Miller*, 202 Ill. 2d 328 (2002), the mandatory sentence of natural life in prison, as applied to defendant, who was a 14-year-old juvenile convicted based on an accountability theory, was unconstitutional; (2) the circuit court erred in dismissing his petition where defendant showed that he was never placed on notice that he was charged with an enhanced form of first-degree murder which would result in a sentence of natural life in prison based on the fact that there were two decedents in this case; and (3) this court should remand his case for privately retained counsel to comply with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)). For the following reasons, we affirm.

## I. BACKGROUND

Defendant and two codefendants[1] were charged with the first-degree murders of Bryant Johnson and Keith Whitfield, the attempted murders of Melvin Harvey and Keith McGee, and home invasion. Following a hearing, defendant's case was transferred from the juvenile division of the circuit court of Cook County to the criminal division. Defendant and codefendant Caffey were tried simultaneously with separate juries, whereas codefendant Bowman elected to have a bench trial and was tried separately.

---

[1]Codefendants Aaron Caffey and Eugene Bowman are not parties to this appeal.

The following evidence was adduced at trial. The third-floor apartment located at 5616 South Calumet Avenue, in Chicago, Illinois, was used by the Black Disciples, a street gang, as a residence to sell drugs. The building at 5616 South Calumet Avenue was nearly abandoned, except that Alfred Weeden lived in the third-floor apartment and his mother lived on the first floor of the building. Weeden controlled the drug operations in the third-floor apartment, paid the workers, and gave the proceeds to the "minister of the city," who was the leader within the Black Disciples. Weeden allowed defendant and codefendants, who were members of the Gangster Disciples, another street gang, to "double up," which is a street term referring to reselling drugs that they purchased from Weeden. Weeden warned defendant and codefendants to sell the drugs in the back of the building and not to get caught by the "minister of the city." Several days before the murders in this case, the "minister of the city" caught codefendant Caffey selling drugs and slapped him in the face. As a result, defendant and his codefendants started shooting at the Black Disciples, which resulted in the Gangster Disciples and the Black Disciples shooting back and forth throughout an entire weekend.

At about midnight on October 9, 1990, Weeden and Bryant Johnson arrived at the third-floor apartment at 5616 South Calumet Avenue to begin their shift of selling drugs. On that evening, Weeden was to sell drugs and Johnson was responsible for security. When they arrived at the apartment, Keith McGee, Keith Whitfield, Melvin Harvey, Lamont Baxter and Weeden's girlfriend, Joann Reed, were already at the apartment. At about 1 a.m., Baxter, who was not a gang member, left the apartment to purchase fast food for the group.

At about the same time on October 9, 1990, defendant and his two codefendants took a taxicab to the area of 56th Street and Calumet Avenue to seek revenge against the Black Disciples for the insult against Caffey and to claim a spot in the area for the Gangster Disciples to sell drugs. As defendant, Caffey and Bowman contemplated their next move, they saw Baxter exit the apartment building at 5616 South Calumet Avenue and decided to use Baxter to gain entrance into the third-floor apartment building. Baxter testified that defendant, Caffey, and Bowman ran up to him. Caffey raised a gun to Baxter's head and demanded to know who was in the third-floor apartment and whether there were any guns or drugs in the apartment. Baxter testified that all three men had guns. Baxter testified that defendant, Caffey, and Bowman discussed whether they were going to kill everyone in the apartment or whether they were going to let Reed, Weeden's girlfriend, live. Baxter testified that defendant and Bowman made the final decision that they were going to kill everyone in the

apartment except for Reed. Baxter testified that as he begged for his life, defendant, Caffey and Bowman forced him back to the third-floor apartment and made him knock on the apartment door while the three men stooped down behind him.

Weeden testified that about 10 minutes after Baxter left the apartment, he heard knocking on the door and opened the door after Baxter responded that he had returned. Weeden testified that defendant, Caffey and Bowman then charged into the apartment and Caffey and Bowman ran to the living room. Weeden testified that defendant stopped in front of him and held a gun toward him. Weeden testified that he was able to knock the gun out of defendant's hand and defendant ran toward Caffey and Bowman. Harvey testified that he saw defendant, Caffey, and Bowman fire their guns before he dove between the couch and the radiator to hide from the shooting. Weeden and Baxter ran out of the apartment and heard about five gunshots as they ran away. Baxter then called the police. Defendant, Caffey, and Bowman left the scene together. Weeden and Baxter subsequently identified defendant in a police photo array.

Johnson died due to multiple gunshot wounds, and Whitfield died due to a single gunshot wound to the chest. McGee and Harvey sustained multiple, nonfatal gunshot wounds. Police recovered .38- and .32-caliber bullets from the bodies of Johnson and Whitfield, and a .22- caliber bullet from the window of the apartment. A .22-caliber handgun was also recovered in the closet of the apartment but that gun was found not to have been the same gun that fired the recovered .22-caliber bullet. Police recovered a plastic bag containing 43 separate packets of narcotics from the apartment.

Defendant provided a statement to Assistant State's Attorney Brian Sexton, who read the handwritten statement attributed to defendant to the jury. In that statement, defendant described the shootings as detailed above. Defendant stated that he spoke with Caffey and Bowman about getting revenge on the Black Disciples for slapping one of their gang members. Defendant stated that he, Caffey and Bowman agreed to go to the third-floor apartment, located at 56th Street and Calumet Avenue, and shoot their guns to kill anyone in the apartment. On October 9, 1990, defendant took a cab to the apartment with Caffey and Bowman. When they arrived outside the apartment building, Bowman gave each of them a gun. Defendant stated that they saw Baxter leave the apartment and defendant decided to use Baxter to gain access to the apartment. Defendant, Caffey and Bowman decided that they would have Baxter knock on the apartment door, they would tell everyone to lie down on the floor, get the drugs, money and guns, then kill everyone except for Reed. Defendant stated

that after Baxter knocked on the door, Weeden opened the door and knocked the gun out of defendant's hand. Defendant heard Caffey and Bowman fire about five shots and they all ran down the stairs, got into a cab, and left the area.

Defendant's mother testified that she was present when defendant provided his statement, but that she was intoxicated and on drugs. Defendant's grandmother testified that she had been defendant's legal guardian since his birth until he became a ward of the State a few weeks prior to the shootings.

During closing arguments, the State discussed the law of accountability and argued that defendant was responsible for his actions and accountable for the actions of Caffey and Bowman where defendant was involved in the planning and commission of the shootings. Instructions on accountability and felony murder were provided to the jury. The State also argued that there were three guns in the apartment and that defendant fired his gun. During deliberations, the jury sent a note to the trial court asking, "Does a defendant actually have to be proven to have pulled the trigger of the murder weapon during a home invasion or is that person legally responsible for the conduct of another who did?" The trial court responded, "no" to the first part of the jury's question and "yes" to the second part. Defendant objected to the trial court's response. The jury subsequently found defendant guilty of the first-degree murders of Johnson and Whitfield, guilty of the attempted first-degree murders of Harvey and McGee, and guilty of home invasion. Defendant was sentenced to natural life in prison for the first-degree murders, 30 years in prison for each count of attempted first-degree murder, and 30 years in prison for home invasion, all to run concurrently.

On direct appeal, defendant argued that: the circuit court erred when it transferred his case to the criminal court because the circuit court did not consider that defendant was subject to a mandatory life sentence; the circuit court failed to consider limiting the charges transferred to the criminal court; and the circuit court did not consider that the juvenile authorities failed to provide him with adequate services. Defendant also claimed that his mandatory natural life sentence was unconstitutional. This court affirmed the circuit court's judgment. *People v. Davis*, No. 1—93—1821 (October 23, 1995) (unpublished order under Supreme Court Rule 23), *appeal denied*, 165 Ill. 2d 556 (1996).

Defendant filed his first *pro se* postconviction petition on October 11, 1996, more than eight months after his leave to appeal was denied. In that petition, defendant argued that: the circuit court abused its discretion by sentencing him to natural life and "90 years at the age

of 16 (but arrested at 14 years-of-age)," the circuit court erred by precluding expert testimony regarding his ability to understand his *Miranda* rights; it was error for witnesses to testify in front of his jury and codefendant's separate jury during their simultaneous trial; the prosecutor erred by discussing accountability in his opening statement; it was error not to suppress defendant's statement; trial counsel was ineffective for not raising an insanity defense; and the evidence was insufficient to convict defendant beyond a reasonable doubt. The circuit court summarily dismissed defendant's petition on November 20, 1996.

On December 18, 1996, defendant filed a motion for a substitution of judge and an "amended" *pro se* postconviction petition. In his amended *pro se* postconviction petition, defendant claimed his first postconviction petition was dismissed because of judicial bias. Defendant also claimed that trial and appellate counsel were ineffective; that his statement should have been suppressed; that the State knowingly used perjured testimony; that the circuit court allowed improper stipulations denying his right to cross-examination; that the evidence was insufficient to support his convictions; and that he was punished for exercising his right to a jury trial. The circuit court dismissed defendant's amended *pro se* petition on March 17, 1997, and defendant appealed the dismissal of both the initial and the amended postconviction petitions. The office of the public defender of Cook County subsequently filed a motion seeking to withdraw as appellate counsel. This court, pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), granted the public defender's motion to withdraw and affirmed the circuit court's judgment. *People v. Davis*, No. 1—98—2277 (March 5, 1999) (unpublished order under Supreme Court Rule 23), *appeal denied*, 185 Ill. 2d 639 (1999).

On November 10, 1998, defendant filed a third *pro se* postconviction petition. In his petition, defendant alleged that trial counsel was ineffective for failing to produce exculpatory witnesses. Defendant attached an affidavit from Keith McGee, one of the victims in this case. In that affidavit, McGee stated that he did not see defendant or his codefendants during the shooting, and that neither defendant nor his coefendants shot him. On November 30, 1998, the circuit court denied defendant's petition. The circuit court held that defendant's claims were barred by the doctrine of *res judicata* because he had raised an ineffective assistance of counsel claim in his previous petition. The circuit court also determined that defendant's petition was untimely because it was not commenced within the time limitation imposed by the Post-Conviction Hearing Act and defendant failed to show that the delay was not due to his culpable negligence. Defendant appealed and

the public defender of Cook County sought to withdraw as appellate counsel pursuant to *Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990. This court granted the public defender's request to withdraw as counsel and affirmed the circuit court's judgment. *People v. Davis*, No. 1—99—0159 (September 10, 1999) (unpublished order under Supreme Court Rule 23), *appeal denied*, 187 Ill. 2d 576 (2000).

On September 25, 2002, defendant filed a petition, which is the subject of this appeal, seeking relief pursuant to section 2—1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 2002)). In his petition, defendant alleged, *inter alia*, that mandatory life imprisonment for a juvenile convicted through accountability is unconstitutional, and that the indictment did not provide defendant with formal notice that the offense for which he was being tried was not first-degree murder, but rather an aggravated form of first-degree murder mandating natural life in prison. This petition was apparently not placed on the court call, and on April 24, 2003, an assistant public defender filed a motion to appoint the public defender of Cook County and to advance the petition to the second stage of postconviction proceedings as it was not summarily dismissed within 90 days.

On June 2, 2005, assistant public defender Timothy J. Leeming filed a supplemental postconviction petition, relying on *People v. Miller*, 202 Ill. 2d 328 (2002), in support of his argument that a juvenile offender convicted by way of accountability cannot be sentenced to natural-life in prison. The petition also alleged that "whether [defendant] was present at the scene of the crime, whether he accompanied the actual killers before and after the crime, or whether he was armed with a gun at one time or another, are of no legal importance to applying the *Miller* decision." The petition asserted that "[o]nly if the juvenile *actually participates* in the act of killing is a sentence of natural life appropriate," and, therefore, because defendant did not participate in the killings, his natural life sentence is unconstitutional. Assistant public defender Leeming also filed a Rule 651(c) certificate, in which he averred that he consulted with defendant to ascertain his contentions of deprivation of constitutional right, examined the pertinent sections of the record of proceedings at the trial, and filed a supplemental petition, which was necessary for an adequate presentation of defendant's contentions.

The State filed a motion to dismiss defendant's petition on September 8, 2005. In its motion, the State argued that if the circuit court treated defendant's petition pursuant to section 2—1401 of the Code, the petition should be dismissed because it was not filed within the applicable two-year statute of limitations. The State also argued that if the circuit court treated defendant's petition as a postconvic-

tion petition, it should be dismissed as untimely where it was filed well beyond the six-month limitation of the Post-Conviction Hearing Act (725 ILCS 5/122—1(c) (West 2002)). The State also noted that defendant had filed at least two previous postconviction petitions and, therefore, the principles of waiver and res judicata barred further review of defendant's claims. The State further argued that defendant had not even attempted to demonstrate cause and prejudice in order to obtain leave to file a successive postconviction petition. With respect to the substance of defendant's petition, the State argued that defendant's reliance on Miller was misplaced where defendant was an active participant before, during, and after the shootings. The State also disagreed that defendant's conviction was based upon an accountability theory because the State argued at trial that defendant fired his weapon and only argued accountability as an alternative theory.

Defendant subsequently obtained private counsel, who filed a "Verified Second Supplemental Petition for Post Conviction Relief," further alleging that Miller prohibited the imposition of a natural-life sentence for a juvenile who has been deemed accountable for the actions of an adult. The petition also alleged that defendant's mandatory life sentence was unconstitutional because it violated the eighth amendment to the United States Constitution. Private counsel also filed a supplemental response to the State's motion to dismiss, asserting that Miller should be applied retroactively, that defendant was clearly convicted under a theory of accountability, and that the statute requiring a mandatory life sentence violated the Illinois Constitution, as applied to 14-year-old defendant.

Following a hearing, the circuit court granted the State's motion to dismiss defendant's "petition for postconviction relief." In doing so, the circuit court found that defendant's involvement in the multiple killings was distinguishable from the defendant's involvement in Miller. The court noted that while the defendant in Miller only acted as a lookout and "did not enter the edifice where the actual murder took place," defendant in this case "had great participation in the murders." The court explained that the evidence showed that defendant "actually went to the location with the offenders, he actually entered the abode that the murders took place," and he carried a weapon to the crime scene, which he "perhaps dropped," but he nonetheless carried to the scene. Defendant appealed and while defendant's appeal was pending, this court granted the Illinois Coalition for Fair Sentencing of Children leave to file an amicus curiae brief in this case.

Following oral arguments in this case, we asked the parties to file supplemental briefs addressing whether the holding in Miller is applicable to cases on collateral review.

## II. ANALYSIS

### A. *Retroactive Application of Miller*

In his supplemental brief on appeal, defendant argues that the holding in *Miller*, that a mandatory sentence of natural life imprisonment for a juvenile found guilty through accountability violated the proportionate penalties clause, applies retroactively because it is a new substantive rule. The State argues that *Miller* did not create a new substantive rule and, therefore, is not subject to retroactive application in a collateral proceeding.

■ The United States Supreme Court in *Teague v. Lane*, 489 U.S. 288, 307, 103 L. Ed. 2d 334, 353, 109 S. Ct. 1060, 1073 (1989), held that decisions establishing new constitutional rules of criminal procedure are not to be applied retroactively to cases pending on collateral review unless the new rule either: (1) places certain kinds of primary, private individual conduct beyond the power of the criminal-law-making authority to proscribe, or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty. In *People v. Flowers*, 138 Ill. 2d 218, 237 (1990), the Illinois Supreme Court explicitly adopted the standard of *Teague* when deciding if a new constitutional rule of criminal procedure can function retroactively as a basis for a collateral attack. While the Illinois Supreme Court noted that the rule adopted in *Teague* was applied to bar application of a new constitutional rule in *habeas corpus* actions pending in the federal courts, the court found that the collateral review involving an action in state court brought pursuant to the Post-Conviction Hearing Act was sufficiently similar to that involved in *Teague*. *Flowers*, 138 Ill. 2d at 237-38.

In the supplemental briefs filed pursuant to this court's order, the parties discuss the United States Supreme Court's recent decision in *Danforth v. Minnesota*, 552 U.S. at 264, 169 L. Ed. 2d 859, 128 S. Ct. 1029 (2008). The Court first explained:

> "What we are actually determining when we assess the 'retroactivity' of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought." *Danforth*, 552 U.S. at 271, 169 L. Ed. 2d at 865-66, 128 S. Ct. at 1035.

The court suggested that "redressability" is a more accurate term. *Danforth*, 552 U.S. at 271 n.5, 169 L. Ed. 2d at 866 n.5, 128 S. Ct. at 1035 n.5.

In *Danforth*, the Supreme Court reversed the holding of the Minnesota Supreme Court that *Teague* precluded state courts from retroactively applying the holding in *Crawford v. Washington*, 541 U.S.

36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004). The Supreme Court held that state courts were not required to apply the holding in *Teague* when determining whether the holding of a court of review should be applied retroactively. The Court noted that *Teague* involved an analysis of the federal *habeas corpus* statute. *Danforth*, 552 U.S. at 277-79, 169 L. Ed. 2d at 869-70, 128 S. Ct. at 1039-40. The Court explained:

"This interest in uniformity, however, does not outweigh the general principle that States are independent sovereigns with plenary authority to make and enforce their own laws as long as they do not infringe on federal constitutional guarantees." *Danforth*, 552 U.S. at 280, 169 L. Ed. 2d at 871, 128 S. Ct. at 1041.

Unlike the Minnesota Supreme Court, the Supreme Court of Illinois has never held that it was required to apply the holding in *Teague*. However, the Supreme Court of Illinois has applied it on numerous occasions. See *People v. De La Paz*, 204 Ill. 2d 426 (2003) (holding that *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), which held that any fact used to increase the penalty for a state crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, had to be submitted to the jury and proved beyond a reasonable doubt, does not apply to criminal cases in which direct appeals were exhausted before *Apprendi* was decided); *People v. Britt-El*, 206 Ill. 2d 331 (2002) (holding that *People v. Boclair*, 202 Ill. 2d 89 (2002), which held that a trial court cannot summarily dismiss a postconviction petition based on untimeliness, does not apply retroactively); *People v. Hickey*, 204 Ill. 2d 585 (2001) (holding that the new Illinois Supreme Court rules regarding capital sentences do not apply retroactively); *People v. Szabo*, 186 Ill. 2d 19 (1998) (holding that *People v. Johnson*, 154 Ill. 2d 227 (1993), which held that a postconviction petitioner is entitled to the reasonable assistance of counsel in postconviction proceedings, does not apply retroactively); *People v. Caballero*, 179 Ill. 2d 205 (1997) (holding that *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), which held that a trial court must ask potential jurors, on *voir dire* in capital cases, whether they would automatically impose the death penalty if the defendant was convicted, does not have retroactive effect); *People v. Holman*, 164 Ill. 2d 356 (1995) (holding that *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991), which held that a defendant need not be a member of the same race as challenged venireperson to mount a *Batson*-type challenge to venireperson's exclusion, would not be applied retroactively on collateral review); *Flowers*, 138 Ill. 2d at 239 (holding that *People v. Reddick*, 123 Ill. 2d 184 (1988), which created a new rule relating to jury instructions on homicide, does not apply retroactively); *People v. James*, 111 Ill. 2d

283 (1986) (holding that *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981), which held that a statement obtained in a subsequent custodial interrogation after the defendant invoked his right to counsel must be suppressed, does not apply retroactively).

In deciding whether to retroactively apply the holding in *Miller*, we note that this court lacks the authority to not follow the decisions of our supreme court, which are binding on all lower courts. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009), citing *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551-52 (1983). Consequently, we apply the analysis in *Teague* in determining whether the holding in *Miller* should be applied retroactively.

■ In *Miller*, our supreme court found that the mandatory natural life sentencing statute, section 5—8—1 of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 2002)), was unconstitutional as applied to the *Miller* defendant. *Miller*, 202 Ill. 2d at 341. In *Miller*, the defendant was 15 years old and had "one minute to contemplate his decision to participate in the incident and [stand] as a lookout during the shooting, but never handled [the] gun." *Miller*, 202 Ill. 2d at 341. Following the shooting, the *Miller* defendant ran to his girlfriend's house. *Miller*, 202 Ill. 2d at 331. The *Miller* defendant was charged with two counts of first-degree murder (720 ILCS 5/9—1(a)(1) (West 1996)) based on accountability (720 ILCS 5/5—2(c) (West 1996)) and transferred to adult criminal court pursuant to section 5—4(6)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5—4(6)(a) (West 1996)). *Miller*, 202 Ill. 2d at 340. The *Miller* defendant was convicted of both counts and sentenced to 50 years' imprisonment after the trial court found that section 5—8—1 was unconstitutional as applied to him. On direct appeal, our supreme court agreed that the sentence, as applied to the *Miller* defendant, was unconstitutionally disproportionate. *Miller*, 202 Ill. 2d at 341. Our supreme court's finding was based upon the convergence of the accountability statute, the transfer statute, and the mandatory sentencing statute, combined with the fact that the *Miller* defendant was "the least culpable offender imaginable." *Miller*, 202 Ill. 2d at 341. Our supreme court specifically stated:

> "[T]he convergence of the Illinois transfer statute, the accountability statute, and the multiple-murder sentencing statute eliminate the court's ability to consider any mitigating factors such as age or degree of participation. A life sentence without the possibility of parole implies that under any circumstances a juvenile defendant convicted solely by accountability is incorrigible and incapable of rehabilitation for the rest of his life." *Miller*, 202 Ill. 2d at 342-43.

Defendant maintains that *Miller* announced a new substantive rule

that should be applied retroactively under the first prong of the *Teague* rule. However, our supreme court's holding in *Miller* did not create a new substantive rule prohibiting the imposition of a natural life sentence for all juveniles or for all juveniles convicted based on a theory of accountability. Rather, our supreme court held that the sentence was unconstitutionally disproportionate as applied to the *Miller* defendant. This determination was based upon the convergence of the accountability statute, the transfer statute, and the mandatory sentencing statute, combined with the fact that the *Miller* defendant was "the least culpable offender imaginable." *Miller*, 202 Ill. 2d at 341. Our supreme court specifically noted that its "decision does not imply that a sentence of life imprisonment for a juvenile offender convicted under a theory of accountability is never appropriate. It is certainly possible to contemplate a situation where a juvenile offender actively participated in the planning of a crime resulting in the death of two or more individuals, such that a sentence of natural life imprisonment without the possibility of parole is appropriate." *Miller*, 202 Ill. 2d at 341.

Defendant cites *Atkins v. Virginia*, 536 U.S. 304, 153 L. Ed. 2d 335, 122 S. Ct. 2242 (2002), in support of his argument that *Miller* announced a new substantive rule which should be applied retroactively. In *Atkins*, the United States Supreme Court held that executions of mentally retarded criminals were "cruel and unusual punishments" prohibited by the eighth amendment. *Atkins*, 536 U.S. at 321, 153 L. Ed. 2d at 350, 122 S. Ct. at 2252. Courts that have considered the issue of whether *Atkins* constitutes an exception to the *Teague* rule have concluded that *Atkins* announced a new substantive rule that is retroactively applicable to cases on collateral review. See *Bowling v. Commonwealth of Kentucky*, 163 S.W.3d 361 (Ky. 2005); *In re Holladay*, 331 F.3d 1169 (11th Cir. 2003); *Bell v. Cockrell*, 310 F.3d 330 (5th Cir. 2002).

Unlike *Atkins*, which prohibited a category of punishment (*i.e.*, the death penalty) for a class of defendants (*i.e.*, mentally retarded criminals), the holding in *Miller* did not prohibit the imposition of a natural life sentence for all juveniles or for all juveniles convicted based on a theory of accountability. Instead, our supreme court, in *Miller*, concluded that the natural life sentence was unconstitutionally disproportionate as applied to the *Miller* defendant. *Miller*, 202 Ill. 2d at 341. Indeed, in *Roper v. Simmons*, 543 U.S. 551, 161 L. Ed. 2d 1, 125 S. Ct. 1183 (2005), the Supreme Court held that while the execution of individuals who were under 18 years of age at the time of their capital crimes is prohibited by the eighth and fourteenth amendments, the sentencing of a juvenile to natural life in prison is permissible.

This court has previously upheld the constitutionality of the mandatory natural life sentencing statute as applied to juvenile principals against proportionate penalty challenges after *Miller*. See *People v. Smolley*, 375 Ill. App. 3d 167, 171 (2007) (finding that *Miller* is fact specific and declining to extend *Miller* where the juvenile defendant was the principal in the crime). Unlike the instant case, *Smolley* involved a direct appeal. As we have held that *Miller* did not create a new substantive rule that would warrant retroactive application in this case, we decline to apply it.

We acknowledge defendant's argument that there is an element of inequity to our refusal to consider whether his natural life sentence is unconstitutionally disproportionate as applied because his case comes to us on collateral review rather than on direct appeal. We further note that very few juvenile defendants are serving natural life sentences based on having been convicted of multiple counts of first-degree murder under a theory of accountability. This would make it comparatively easy for the courts of this state to consider whether the holding in *Miller* should be applied to cases on collateral review. It is the opinion of this panel of the appellate court that if there was ever a case that should be applied to cases on collateral review even though it does not meet the requirements of *Teague, People v. Miller*, 202 Ill. 2d 328 (2002), is that case. Having said this, we do not mean to indicate in any way how this court or the circuit court should rule on the instant case should our supreme court permit such review.

### B. Notice of Mandatory Life Sentence

■ Defendant next contends that the circuit court erred by dismissing his postconviction petition where he made a substantial showing that his indictment did not place defendant on notice that he faced the possibility of a mandatory natural life sentence.

The State initially argues that defendant has forfeited this claim because he failed to raise the issue in his motion for a new trial, in his direct appeal, or in his postconviction petitions. The record shows that in defendant's *pro se* petition at issue here, defendant argued that he "received sentences far beyond the range available for his offenses without having been given notice of the factor which rendered the charges against him aggravated forms of first degree murder." Section 122—3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 2002). Accordingly, where defendant did not raise this claim in his original petition, he forfeited the claim.

Forfeiture aside, we find that the circuit court's dismissal was

proper where defendant failed to provide a substantial showing of a constitutional deprivation. Defendant argues that under section 111—3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3 (West 2002)), the State was required to notify defendant that he was eligible to receive a mandatory natural life sentence pursuant to section 5—8—1(1)(c)(ii) of the sentencing statute.

Section 111—3(a) provides that a charging document must be in writing and allege the commission of an offense by: "(1) Stating the name of the offense; (2) Citing the statutory provision alleged to have been violated; (3) Setting forth the nature and elements of the offense charged; (4) Stating the date and county of the offense as definitely as can be done; and (5) Stating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." 725 ILCS 5/111—3(a)(1) through (a)(5) (West 2002). Section 111—3(c) provides that "[w]hen the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant." 725 ILCS 5/111—3(c) (West 2002).

Our supreme court, in *People v. Jameson*, 162 Ill. 2d 282, 290-91 (1994), held that section 111—3(c) required pretrial notice of the *offense* with which he is charged, but not the *sentence* imposed. According to our supreme court, "[s]ection 111—3(c) ensures that a defendant receives pretrial notice that the State is charging the defendant with a higher classification of offense because of a prior conviction. A criminal defendant has no corresponding due process right to receive pretrial notice of the sentence he will receive upon conviction." *Jameson*, 162 Ill. 2d at 291. Here, defendant was charged, *inter alia*, with two counts of first-degree murder and faced a mandatory natural life sentence based upon the multiple-murder sentencing statute (730 ILCS 5/5—8—1(1)(c)(ii) (West 2002)). The State did not charge defendant in this case with a higher classification of offense because of a prior conviction. Therefore, the State was not required to notify defendant of the sentence he would receive upon conviction.

In addition, we note that the record rebuts defendant's claim that he was unaware that he faced a mandatory natural life sentence. At the transfer hearing and on direct appeal, defendant argued that it was improper to transfer his case from the juvenile justice system to the adult criminal courts because he faced a natural life sentence. Also, in granting the transfer, the circuit court noted that "if [defendant] [was] found guilty, in adult court that would require natural life for the offense of murder."

## C. Postconviction Counsel's Compliance With Rule 651(c)

■ Defendant lastly contends that this court should remand his case for privately retained postconviction counsel to demonstrate compliance with Supreme Court Rule 651(c). Defendant argues that he received inadequate representation because private postconviction counsel did not file a Rule 651(c) certificate and there is no evidence in the record to show that counsel communicated with defendant about his contentions of deprivation of constitutional rights.

Initially, we note that defendant is not constitutionally entitled to the effective assistance of counsel at a postconviction proceeding. *People v. Vasquez*, 356 Ill. App. 3d 420, 422-23 (2005). Instead, counsel's performance in a postconviction proceeding is dictated by statute. This court has held that, in a postconviction proceeding, the statute entitles a defendant to a reasonable level of assistance. *Vasquez*, 356 Ill. App. 3d at 423.

Supreme Court Rule 651(c) requires that the record in postconviction proceedings demonstrate that counsel "has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." 134 Ill. 2d R. 651(c); *Vasquez*, 356 Ill. App. 3d at 423.

Here, retained postconviction counsel failed to file a Rule 651(c) certificate. However, our supreme court has held that the absence of a Rule 651(c) certificate is harmless if the record shows that counsel met the requirements of the rule. *People v. Guest*, 166 Ill. 2d 381, 412 (1995). The record shows that privately retained postconviction counsel alleged constitutional errors in the supplementary postconviction petition that defendant did not raise in the *pro se* petition. Postconviction counsel's argument against the State's motion to dismiss also demonstrated counsel's knowledge of the facts adduced at trial. Further, the record shows that there was communication between postconviction counsel and defendant. Postconviction counsel filed a "verified" supplemental postconviction petition, in which defendant swore under oath that he read the petition and reviewed the petition with counsel. Accordingly, we find that retained postconviction counsel satisfied the requirements of the rule.

For the above reasons, we affirm the judgment of the circuit court.

Affirmed.

MURPHY, P.J., and THEIS, J., concur.