2024 IL App (1st) 221820-U
No. 1-22-1820

FIRST DIVISION
November 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06 CR 673 |
| | ) | |
| CORNELIUS BROWN, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Charles P. Burns, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1     *Held:* (1) Defendant failed to establish by a preponderance of the evidence that trial counsel provided ineffective assistance of counsel. (2) Defendant failed to establish a reasonable probability that but for postconviction counsel's alleged deficiencies the outcome of the third-stage evidentiary hearing would have been different.

¶ 2     Defendant Cornelius Brown appeals the dismissal of his postconviction petition following a third-stage evidentiary hearing. Defendant argues that he proved by a preponderance of the evidence that trial counsel provided ineffective assistance where he failed to investigate and call two witnesses Rudolph Griffin ("Griffin") and Charles Starnes ("Starnes) whose

testimony would have provided a basis for a second degree murder instruction based on imperfect self-defense. Additionally, defendant argues that postconviction counsel provided unreasonable assistance where she misstated the case's procedural history, wavered as to whether the amended petition raised a new claim, and failed to call Starnes at the third-stage evidentiary hearing. We affirm.

¶ 3                                    BACKGROUND

¶ 4                                Pretrial Proceedings

¶ 5        On January 3, 2006, a grand jury indicted defendant for six counts of first degree murder (720 ILCS 5/9-1(a)(1)-(2) (West 2006)) and two counts of unlawful use of weapon by a felon (*id*. § 24-1.1) for shooting and killing Jonathan Davis ("Davis"). The case proceeded to a jury trial.

¶ 6        At a pretrial hearing, defense counsel Stephen Cary ("Cary") informed the circuit court that he did not file his answer to discovery because he planned to raise self-defense and was attempting to locate an additional witness. The circuit court granted defense counsel a continuance to file an answer to discovery.

¶ 7        At the subsequent pretrial hearing, Cary informed the court that he had filed his answer to discovery. The answer to discovery indicated that defendant may call "A-" and "B-" to testify. Cary told the court that "potentially there's one name that I may supplement to that, Judge, and I'm working on getting the particulars so I can file a birth date and address that I provide to the State***." Additionally, Cary filed a document entitled "Affirmation by Defendant" which he and defendant signed. The Affirmation by Defendant stated that Cary advised defendant not to pursue trial because it would be against his best interests and that a self-defense strategy was not supported by the evidence.

¶ 8                                          Jury Trial

¶ 9        At trial, Percy Spearman ("Spearman") testified that he went to the Marquis Room located at 5065 West Madison Street, Chicago, Illinois, on the evening of December 12, 2005. His friend Davis and Davis's sister Kim were also at the Marquis Room. Spearman and Davis had a few drinks and exited the Marquis Room. They walked across the street to a gas station, and defendant and Michael Hall ("Hall") approached them. Hall grabbed and pushed Davis. Davis told Hall to "stop playing." Davis and Hall started arguing, and defendant eventually joined the argument. Defendant told Davis, "don't be right here when I come back." Defendant and Hall then left the gas station in a black Chevrolet Caprice.

¶ 10       Spearman and Davis returned to the Marquis Room and had another drink. They exited the Marquis Room, and Spearman walked to the gas station across the street. Spearman saw the black Chevrolet Caprice park close to the Marquis Room. Hall and defendant exited the car, and Hall started arguing with Davis. Defendant walked up to Spearman and asked him about the argument. Spearman said he did not want to be involved and told Davis they should leave. Spearman walked away, but Davis continued to argue with Hall. Spearman turned around and saw defendant pointing a firearm at Davis. Spearman testified that Davis "threw up his hands like ahh, ahh, ahh ***" and held both his hands out in front of him, attempting to shield his face. Defendant pulled the trigger. Davis did not have anything in his hands; he did not touch or push defendant or Hall prior to defendant shooting him; and Spearman did not see Davis with a weapon the evening of December 12, 2005, or the early morning hours of December 13, 2005. The police arrived, and defendant ran away.

¶ 11       Hall testified that he loaned his blue Chevy Caprice to defendant on the evening of December 12, 2005. Defendant picked Hall up in the car, and they went to the Marquis Room.

Hall, Davis, and defendant initiated an argument at the gas station across from the Marquis Room. The argument never became physical. Hall and defendant drove away. Later that same evening, they returned to the Marquis Room. Defendant and Davis started arguing in front of the Marquis Room. As the argument escalated, defendant and Davis pointed fingers in each other's faces. Hall exited the car and attempted to stop the argument. Hall heard a gunshot. The police arrived immediately, and Hall ran away.

¶ 12     On December 14, 2005, Hall spoke with an assistant state's attorney and a detective. He provided a handwritten, signed statement. In the written statement, Hall stated that defendant said, "f*** this shit," pulled out a firearm, pointed it at Davis, and fired. On the same day, Hall testified before a grand jury and said, "[defendant] pulled a gun and shot [Davis]." Hall never saw Davis with a weapon.

¶ 13     Police officers Joseph DiPinto and Jim Bunyon testified that they heard a gunshot while patrolling at approximately 12:10 a.m. on December 13, 2005. They looked in the direction of the gunshot and saw Davis lying on the ground with defendant and Hall standing over him. Defendant held a firearm in his right hand. The officers accelerated towards the scene and activated their emergency equipment. Defendant and Hall ran, and the officers pursued them. Dipinto followed defendant and witnessed him discard his firearm on the side of the street. Dipinto instructed another unit to guard the firearm while he continued pursuing defendant. Defendant ran into an apartment building and attempted to hide from the police. The police cornered and arrested him in one of the apartments.

¶ 14     Dr. Joseph Lawrence Cogan testified that he performed the autopsy on Davis. Davis had a close-range gunshot wound to his face. Based on the stippling around the gunshot wound, Dr. Cogan estimated that the firearm was within 18 inches or less of Davis's face at the time it was

discharged. The bullet entered through the left cheek area of his face and exited over the top of his right ear. The cause of death was a gunshot wound to his face, and the manner of death was homicide.

¶ 15    The police recovered the firearm. DNA analysis of the firearm identified two DNA profiles: a major and a minor contributor. Defendant's DNA matched the profile of the major contributor. A cartridge case recovered from the scene came from the firearm that defendant discarded while fleeing from the police. The State rested.

¶ 16    Defendant testified that he and Hall went to the Marquis Room on the evening of December 12, 2005. He walked to the nearby gas station to purchase a drink. When he exited the gas station, Hall and Davis argued about a prior incident. They argued loudly for approximately ten minutes before defendant and Hall drove away. They later returned to the Marquis Room. Hall and Davis started arguing again. Defendant intervened to "calm it down," but then he and Davis argued.

¶ 17    Defendant described Davis as "some-timey." He elaborated that "[s]ometimes he's all right but then sometimes, you know he's a violent person." On a prior occasion, defendant witnessed Davis hit another friend. Defense counsel asked defendant whether anything happened that made him fear for his life. Defendant answered, " [w]ell, I know what type of person he was, so by us kept on going back and forth arguing, and then, you know, he kept on telling me, you know, I better get out of his face and all this, and then when he reached back up again, I just pulled the gun." Defendant believed his life was in danger.

¶ 18    On cross-examination, the State asked, "[y]ou didn't have any problems with [Davis] before this night?" Defendant answered no. Defendant testified that when he and Hall returned to the Marquis Room, he exited the car first and approached Davis to diffuse the situation. He had a

loaded, cocked firearm with the safety off in his pocket. The State asked, [w]hen is it that you went for the gun?" He responded, "[w]ell, after he put his hand in my face, I put mine back in his, and then we kept on going back and forth, you know. So he had made another move towards me, so I reached for the gun and pulled the gun out." Defendant demonstrated Davis's "lunge," and the court described it as "defendant's hands are at his waistline, either side of his belt buckle, pointed down." Defendant elaborated that Davis's hands were down, but the top part of his body lunged towards him. Davis did not touch defendant. Defendant pulled out his firearm and shot Davis. Defendant testified, "I pulled the trigger."

¶ 19        Defendant did not see Davis with a weapon and did not warn Davis before shooting him. Defendant testified that he was not afraid to return to the Marquis Room or to approach Davis. The State asked, "[a]nd despite whatever argument you had seen him in, in the past, you weren't afraid to argue with him; and when he said get out of my face, you didn't get out of his face; you kept arguing, right?" Defendant responded, "[y]eah, I kept arguing." Defendant then explained that he was afraid, but he did not want to show it.

¶ 20        Defendant admitted that he denied any involvement in Davis's murder in his initial interview with the police. He initially lied to the police because he was afraid. Additionally, defendant admitted that he initially celebrated when the interviewing detective informed him that they were investigating him for aggravated battery.

¶ 21        Defense counsel requested a self-defense instruction and a second degree murder instruction based on unreasonable belief. The circuit court noted there was no evidence that Davis threatened defendant. Defendant's testimony that Davis "feinted" slightly towards him was insufficient. Additionally, the only physical contact was incidental at most. The circuit court found that defendant was the aggressor and that he used excessive force. A jury could not

reasonably conclude that defendant reasonably or unreasonably believed that deadly force was justified. The circuit court denied the request.

¶ 22    The jury convicted defendant of first degree murder, and the circuit court sentenced him to 50 years of imprisonment. Defendant appealed, and this court affirmed his conviction and sentence. *People v. Brown*, No. 1-08-0475 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 23                         Prior Postconviction Proceedings

¶ 24    Defendant filed a *pro se* petition for postconviction relief in which he argued that Cary provided ineffective assistance for failing to investigate and interview Griffin and Starnes, whose testimony, together with that of defendant, would have provided necessary evidence for jury instructions on self-defense and second degree murder. Defendant attached Hall's affidavit, Griffin's affidavit, Starnes's affidavit, and his own affidavit to his petition.

¶ 25    In his affidavit, Hall averred that he provided incomplete trial testimony. He knew the subject of his and Davis's argument on December 12, 2005. He claimed Davis's friends assaulted him on December 3, 2005, and Davis shot at defendant's van on December 5, 2005. On December 12, 2005, Hall approached Davis about the assault. Defendant asked Davis why he shot at his van. Hall also claimed that he only signed a statement because the police threatened to charge him with Davis's murder. Additionally, he did not hear defendant say "f*** this shit," but the assistant state's attorney added that to the statement.

¶ 26    In his affidavit, Griffin averred that Davis approached him outside of the Marquis Room on the first Monday of December 2005. They started arguing. Defendant arrived in his van and told Griffin to get in the van. They drove away, and Davis shot out the back passenger window

of the van near the corner of Madison and Leclaire. Griffin claimed that he and defendant knew about Davis's reputation for shooting at people and carrying a firearm.

¶ 27    In his affidavit, Starnes averred that he witnessed Davis shoot at defendant's van near the corner of Madison and Leclaire on December 5, 2005. Davis shot out the back passenger window. On December 10, 2005, Starnes and defendant discussed the shooting, and defendant told Starnes that he planned to discuss it with Davis.

¶ 28    In his affidavit, defendant averred that he informed Cary that Griffin and Starnes witnessed Davis shooting at defendant's van. Defendant claimed that when Davis lunged at him, Hall shoved himself between them, which caused the firearm to discharge.

¶ 29    The circuit court summarily dismissed defendant's petition. This court reversed and remanded for second stage proceedings. *People v. Brown*, 2014 IL App (1st) 121135-U.  This court determined that "defendant's legal theory that defense counsel was ineffective for failing to interview *** Griffin and Starnes and call them as witnesses in support of defendant's claims of self-defense was completely contradicted by the record" since "the evidence demonstrated that *** defendant was the aggressor." *Id*. ¶ 44. Moreover, this court found that "[h]ad defense counsel interviewed *** Griffin and Starnes, their testimony could have provided the evidence necessary to entitle *** defendant to an unreasonable belief second-degree-murder instruction." *Id*. ¶ 49.

¶ 30                                    Remand Proceedings

¶ 31    On remand, defendant's postconviction counsel filed a Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) certificate and did not amend defendant's petition. The State filed a motion to dismiss. Defendant's postconviction counsel filed a response. The circuit court determined that defendant "made a substantial showing of a constitutional violation to warrant an evidentiary

hearing only with respect to the claim that trial counsel was ineffective for failure to interview and present the testimony of Griffin and Starnes." The circuit court dismissed the remaining claims.

¶ 32    Prior to the evidentiary hearing, a different postconviction counsel, Camille Calabrese ("Calabrese"), filed an amended answer to discovery and included defendant's wife, Anjel Renee Brown ("Renee"), as a witness. Calabrese also filed an amendment to defendant's postconviction petition and Renee's affidavit. The amendment claimed that Cary provided ineffective assistance for failing to call Renee as a witness.

¶ 33    In her affidavit, Renee averred that she retained Cary to represent defendant. Prior to trial, Renee informed Cary that Davis shot out the windows of her van a week before his murder. Defendant and Griffin were in the van when Davis shot out the windows. She provided Cary with Griffin's phone number. Cary never asked her for more information to verify that the incident happened and never interviewed her. Renee was familiar with Davis's reputation for "peacefulness" but knew him to carry a firearm and become violent with people. Defendant told Renee his intention to tell Davis not to shoot at the van. Renee paid to repair the van.

¶ 34    The State filed a motion to dismiss defendant's amendment to his petition and Renee's affidavit. Calabrese filed a Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) certificate. At a hearing on the State's motion to dismiss, Calabrese wavered between claiming she added a new claim relating to Renee's testimony and claiming she only included the testimony to support the ineffective assistance claims based on Griffins and Starnes's testimony. The circuit court granted the State's motion for the new claim based on Cary's failure to call Renee but allowed her testimony to support the other two claims.

¶ 35 At a later hearing, Calabrese filed a motion to amend the witness list because Griffin died. She added public defender Jim Jacobs ("Jacobs") and investigator Alicia Stewart ("Stewart") as witnesses to testify about their interviews with Griffin. The circuit court granted the motion.

¶ 36             Evidentiary Hearing

¶ 37 At the evidentiary hearing, defendant testified that prior to his trial, he informed Cary that Griffin and Starnes would testify to a prior incident where Davis shot at him and Griffin while they were driving in his wife's van. Starnes witnessed the shooting. At the start of the trial, defendant asked Cary, "where are my witnesses?" Cary responded that he could not contact them, and that defendant would need to testify to obtain a second degree murder instruction based on imperfect self-defense. Although defendant knew how to contact and locate Griffin and Starnes, Cary never asked defendant for that information. Defendant did not want to testify at trial. Defendant testified that he "did not have any problems" with Davis. Cary told defendant that he could not testify about the incident between Davis and Griffin at the trial.

¶ 38 On cross-examination, defendant stated that he did not inform Renee of his intention to discuss the van incident with Davis. Additionally, the State questioned defendant about his failure to testify about the van incident at trial:

> "Q. Back then you stated that you were telling the truth from that witness stand [at trial], right?
> A. Yes.
> Q. But you're here today saying what you said [at trial] was not correct, right?
>       * * *
> A. No, that's not what I'm saying. What I'm saying is what I testified to was what I knew that I could say because he prevented me from testifying to everything else. What I testified to [at trial] was not a lie. It was the truth but I couldn't tell the whole truth because he told me I couldn't put this evidence out there."

Q. When you testified *** at trial you were—it's your testimony today you were still worried about what *** Cary told you not to say two years before [during a pretrial meeting]?

A. Yes.

Q. And there was—it's your testimony here today there was no other prevention, right?

A. No.

Q. He didn't cut you off when you were on the witness stand, right?

A. No.

Q. He didn't object when you started talking about that previous incident, right?

Q. No.

Q. You never tried to bring up that previous incident at trial, did you?

A. No."

On redirect, Calabrese asked defendant, "[a]nd when Mr. Cary told you that you had to testify, did he again in any way tell you what you could or could not say?" Defendant answered, "no, not at that time. He didn't say anything. He just told me I had to get on the stand and so I got up and he told me to approach the bench."

¶ 39  Jacobs testified that he interviewed Griffin in person, and they reviewed Griffin's affidavit. Griffin verified that the information in his affidavit was accurate and that he would testify accordingly. Jacobs spoke with Starnes on the telephone, and they reviewed Starnes's affidavit. Starnes verified that the information in his affidavit was accurate and that he would testify accordingly. Jacobs read both affidavits into the record. Stewart testified that she interviewed Griffin. Griffin confirmed that the information in his affidavit was accurate and that he would testify accordingly.

¶ 40  Renee testified that she informed Cary that Davis shot at her van two weeks prior to his murder and that defendant wanted Cary to contact the witnesses to this incident. Later, she again requested Cary contact the witnesses, and he told her to convince defendant to accept the plea deal because he did not want to go to trial. Renee testified that Griffin had appeared in court twice for proceedings on this case.

¶ 41    On cross-examination, Renee testified that defendant told her about the van incident. Defendant said that he and Griffin were driving up Lavergne when Davis "popped out" and started shooting at the van. Renee stated that Davis shot out the front passenger window. She paid to have the window repaired. She did not keep the receipt or remember where she took the van to get repaired. She no longer owned the van because she sold it. She did not file a police report of the incident. She confirmed that defendant told her his intention to discuss the incident with Davis.

¶ 42    The State called Cary as a witness. The State asked Cary if defendant provided him with the names of any potential witnesses. Cary responded that defendant told him about Hall. Cary did not recall defendant providing him with the names of any other witnesses. Cary testified that as a routine practice, he left a few blank spaces labeled "A-" and "B-" in his answer to discovery for any possible "last minute" witnesses defendant might provide. When he filed his answer, the "A-" and B-" labels did not represent any particular witnesses. The State asked, "[a]t the time you filed these documents, were you aware of any witnesses' names that would have assisted in the self-defense?" Cary answered, "[n]o, I wasn't. In fact, I believe I informed the judge when I filed those paperworks that I would—left those blanks open because Judge Fox remarks about why there are open spots. I told the judge in case I'm able to locate another witness I would have the availability to add them to my answer."

¶ 43    Cary did not recall a conversation between him and Renee regarding Davis shooting at a van driven by defendant. The State asked, "do you remember anybody telling you about a prior incident where *** Davis shot at a van that was being driven by your client?" Cary answered no and he would have followed up if he had been informed about the prior incident. Cary testified

that he did not inform defendant that he could not testify to a prior altercation between him and Davis.

¶ 44        The circuit court denied defendant's postconviction petition following the third-stage evidentiary hearing. The circuit court gave little weight to the contents of Griffin and Starnes's affidavits since they did not testify at the hearing. The circuit court noted that Renee's testimony differed from defendant's testimony. She claimed defendant informed her of his intention to tell Davis not to shoot at their van, but he denied telling her this information.

¶ 45        The circuit court noted inconsistencies in defendant's testimony, affidavit, and trial testimony. The circuit court stated:

> "In his affidavit, [defendant] states that he apparently informed *** Cary about a prior incident involving *** Davis shooting at Griffin *** and Starnes witnessed the incident. Nowhere in his affidavit does he state that Davis shot at Griffin while Griffin was in [defendant's] van while [defendant] was driving the van, a fact that Griffin, Starnes, and [Renee] all attest to. In fact, *** in the petition itself, [defendant] states he informed counsel that he did not know what the basis of the prior incident was; however, he mentioned being in the van for this apparent shooting by Davis at the hearing.
>
> Furthermore, [defendant] states in his affidavit that he did not intend to shoot Davis and the gun just went off when Hall intervened during their argument. However, at trial, [defendant] testified that he pulled the trigger and shot Davis—shot the gun due to Davis's aggressive nature towards him, in fear for his life that he would attack, as he had done other people."

The circuit court found defendant's testimony that he had no problems with Davis contradicted his claim that Davis shot at his van. The circuit court credited Cary's testimony that he was unaware of Griffin and Starnes. The circuit court noted that defendant failed to show prejudice because Griffin and Starnes's testimony would not change the determination that defendant was the initial aggressor. The circuit ruled that defendant failed to prove by a preponderance of the evidence that Cary provided ineffective assistance of counsel.

¶ 46                                ANALYSIS

¶ 47                    Ineffective Assistance of Trial Counsel

¶ 48          On appeal, defendant argues that he proved by a preponderance of the evidence that Cary provided ineffective assistance of counsel for failing to investigate and call Griffin and Starnes, whose testimony would have provided a basis for a second degree murder instruction based on imperfect self-defense.

¶ 49          The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2 *et seq.* (West 2012)) provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the circuit court does not dismiss the petition as frivolous or patently without merit, it advances to the second stage. *People v. Domagala*, 2013 IL 113688, ¶¶ 32-33. At the second stage, the circuit court examines a postconviction petition to determine whether the petition and any accompanying documentation make a substantial showing of a violation of constitutional rights. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. *Id.*

¶ 50          At an evidentiary hearing, defendant must establish a violation of a constitutional right by a preponderance of the evidence. *People v. Coleman*, 2013 IL 113307, ¶ 92. "[T]he circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *Domagala*, 2013 IL 113688, ¶ 34. The circuit court is in a better position than the reviewing court to engage in fact-finding and credibility determinations since it saw and heard the witnesses. *People v. Taylor*, 237 Ill. 2d 356, 278 (2010). Accordingly, we review the circuit court's ruling following a third-stage evidentiary hearing for manifest error, which is an error

that is "clearly evident, plan, and indisputable." *People v. Reed*, 2020 IL 124940, ¶ 51. However, "[i]n reviewing claims of ineffective assistance of counsel, we use a bifurcated standard of review, wherein we defer to the circuit court's findings of fact unless they are against the manifest weight of the evidence, but make a *de novo* assessment of the ultimate legal issues of whether counsel's actions support an ineffective assistance claim." *People v. Nowicki*, 385 Ill. App. 2d 53, 81 (1st Dist. 2008).

¶ 51        To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To demonstrate deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. *Id*. at 694.  A defendant's failure to establish either prong is fatal to his claim. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 52        Generally, "[d]ecisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79. "[T]hese types of decisions are considered matters of trial strategy and are generally immune to claims of ineffective assistance of counsel." *Id*. Still, "[a]ttorneys have an obligation to explore all readily available sources of evidence that might benefit their clients." *People v. Morris*, 335 Ill. App. 3d 70, 79 (1st Dist. 2002). Failure to investigate and present available witnesses to corroborate a defense can result in ineffective assistance. *Id*. However, trial counsel cannot be faulted for not investigating or calling witnesses who were completely unknown to him. See *People v. English*, 403 Ill. App. 3d 121, 137-39 (1st Dist. 2010).

¶ 53    Here, whether defendant proved by a preponderance of the evidence that Cary's performance was deficient came down to a credibility contest between defendant and Renee on one side and Cary on the other. Both defendant and Renee claimed that they had informed Cary about the shooting of Renee's van, and that Starnes and Griffin witnessed the incident. In contrast, Cary testified that no one informed him about the prior incident, and he would have investigated Griffin and Starnes if he had known. The circuit court found Cary's account credible while discrediting Renee and defendant.

¶ 54    After reviewing the testimony of defendant, Renee, and Cary, we find that the circuit court's findings were not manifestly erroneous, as the opposite conclusion is not clearly apparent. *Samour, Inc. v. Board of Election Com'rs of City of Chicago*, 224 Ill. 2d 530, 544 (2007) (a finding is manifestly erroneous when the opposite conclusion is clearly evident). Rather, we note that the record supports the circuit court's findings.

¶ 55    Notably, defendant testified at trial that he pulled the trigger and shot Davis, but in his affidavit and at the evidentiary hearing, he claimed that Hall caused the firearm to discharge. This further contradicted his trial testimony that he pulled the trigger because he believed his life was in danger. Defendant's testimony that he did not have any problems with Davis contradicted his claim that Davis shot at him a week prior to Davis's murder. Renee and defendant contradicted each other regarding whether he informed her of his intention to discuss the prior incident with Davis. Renee claimed that Davis shot out the front passenger window, while Griffin and Starnes claimed it was the back passenger window. Renee also claimed that Davis "popped out" on Lavergne Street, while Griffin and Starnes averred that Davis shot at the van from Leclaire Street.

¶ 56  Accordingly, since the circuit court believed Cary's testimony that Griffin and Starnes were completely unknown to him, he could not be deficient for failing to investigate or call them as witnesses. See *English*, 403 Ill. App. 3d at 137-39. Since defendant failed to prove by a preponderance of the evidence that Cary provided deficient performance, his ineffective assistance of counsel claim fails. *Easley*, 192 Ill. 2d at 318 (failure to establish either prong of the ineffective assistance of counsel test is fatal to the claim). Still, we note that the absence of Griffin and Starnes's testimony did not prejudice defendant because their testimony did not refute that defendant was the aggressor during the confrontation with Davis on December 12, 2005, through December 13, 2005.

¶ 57  The form of second degree murder, at issue in this case, is commonly referred to as imperfect self-defense. *People v. Jeffries*, 164 Ill. 2d 104, 113 (1999). "Self-defense consists of six factors: '(1) force is threatened against a person, (2) the person is not the aggressor, (3) the danger of harm was imminent, (4) the threatened force was unlawful, (5) the person actually and subjectively believed a danger existed that required the use of the force applied, and (6) the person's beliefs were objectively reasonable.' " *People v. Castellano*, 2015 IL App (1st) 133874, ¶ 149 (quoting *People v. Washington*, 2012 IL 110283, ¶ 35. "A conviction for second degree murder based on the mitigating factor of imperfect self-defense is appropriate when "there is sufficient evidence that the defendant believed he was acting in self-defense, but that belief is objectively unreasonable." *People v. Hampton*, 2021 IL App (5th) 170341, ¶ 99 (quoting *Jeffries*, 164 Ill. 2d at 113). Put another way, to be found guilty of second degree murder, the defendant must prove by a preponderance of the evidence that all of the first five factors of self-defense were present. *Castellano*, 2015 IL App (1st) 133874, ¶ 149. Accordingly, an instruction of second degree murder based on imperfect self-defense is not permissible if the defendant was the

aggressor. *People v. Tenner*, 157 Ill. 2d 341, 373 (1993) (because defendant was the aggressor second degree murder based on imperfect self-defense was unavailable); *People v. Morgan*, 187 Ill. 2d 500, 534-35 (1999); *People v. Mayoral*, 299 Ill. App 3d 899, 913 (1st Dist. 1998); *People v. Smith*, 243 Ill. App. 3d 358, 362 (1st Dist. 1993).

¶ 58    Here, Griffin and Starnes's testimony pertained to an incident that occurred on December 5, 2005. Their testimony did not concern defendant shooting Davis on December 12, 2005, through December 13, 2005, or the events that led up to the shooting. While their testimony established a reason to fear Davis and knowledge that he generally possessed a firearm, it did not demonstrate that defendant was not the aggressor in his confrontation with Davis and defendant would not have been entitled to a second degree murder instruction based on imperfect self-defense had the jury heard their testimony. *Tenner*, 157 Ill. 2d at 373. Accordingly, defendant also failed to establish by a preponderance of the evidence that Cary's allegedly deficient performance in any way prejudiced him. *Strickland*, 466 U.S. at 694.

¶ 59                    Ineffective Assistance of Postconviction Counsel

¶ 60    Defendant also argues that postconviction counsel Calabrese provided unreasonable assistance where she misstated the case's procedural history, wavered on whether the amended petition raised a new claim, and failed to call Starnes at the third-stage evidentiary hearing.

¶ 61    A postconviction petitioner is not constitutionally entitled to the effective assistance of counsel at a postconviction proceeding. *People v. Davis*, 388 Ill. App. 3d 869, 884 (1st Dist. 2009). Rather, counsel's performance in a postconviction proceeding is dictated by the Act, and the Act entitles a petitioner to only a reasonable level of assistance. *Id*. For these reasons, while the *Strickland* test is not the relevant standard for addressing such claims, it is an essential standard for comparison. *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 37. Accordingly, if

postconviction counsel's performance cannot be deemed deficient under *Strickland*, then counsel's performance cannot be deemed unreasonable under the Act. *Id*.

¶ 62        To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced him. *Strickland*, 466 U.S. at 687-88. To demonstrate deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Id*. at 694. A defendant's failure to establish either prong is fatal to his claim. *Easley*, 192 Ill. 2d at 318.

¶ 63        Regarding defendant's initial two claims regarding Calabrese's unreasonable assistance—misstated the case's procedural history and wavered as to whether the amended petition raised a new claim—defendant fails to show a reasonable probability that but for these alleged deficiencies, the result of the proceeding would have been different. Rather, defendant concludes that these alleged deficiencies prejudiced him. A reviewing court is not a repository into which an appellant may foist the burden of argument and research. *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2nd Dist. 2010). Accordingly, since defendant fails to argue the prejudice prong of these two claims, we decline to find that Calabrese provided unreasonable assistance of counsel where she misstated the case's procedural history and wavered on whether the amended petition raised a new claim.

¶ 64        Defendant also argues that Calabrese provided unreasonable assistance for failing to call Starnes at the third-stage evidentiary hearing. Defendant points to the circuit court's comments as evidence that the lack of Starnes's testimony at the evidentiary hearing prejudiced him. *Supra* ¶ 44. While Starnes's testimony would have corroborated whether Davis shot at defendant's van

a week prior to his murder, it would not have impacted the determination of whether defendant and Renee informed Cary about the prior shooting, and it would not provide any evidence for the jury to determine that defendant was not the initial aggressor. *Supra ¶¶* 56, 58. There is no reasonable probability that Calabrese's failure to ensure that Starnes testified at the third-stage evidentiary hearing resulted in the dismissal of his petition. Accordingly, since Calabrese's performance cannot be deemed deficient under *Strickland*, her performance cannot be deemed unreasonable under the Act. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37.

¶ 65                                    CONCLUSION

¶ 66        For the above reasons, we affirm the circuit court's third-stage dismissal of defendant's postconviction petition following an evidentiary hearing.

¶ 67        Affirmed.